(No. 30811.—

THE PROGRESSIVE PARTY *et al.,* Appellees and Cross Appellants, *vs.* MICHAEL J. FLYNN *et al.,* Cross Appellees.— (EDWARD J. BARRETT, Secretary of State, Appellant.)

*Opinion filed November 18, 1948.*

GEORGE F. BARRETT, Attorney General, of Springfield, (ALBERT E. HALLETT, of Chicago, of counsel,) for appellant.

H. B. RITMAN, MILTON T. RAYNOR, EDMUND HATFIELD, and RICHARD F. WATT, all of Chicago, for appellees and cross appellants.

WILLIAM J. TUOHY, State's Attorney, BENJAMIN S. ADAMOWSKI, Corporation Counsel, and BERNARD J. KORZEN, (GORDON B. NASH, MELVIN F. WINGERSKY, JAMES A. CONDON, JOHN J. COGAN, JR., L. LOUIS KARTON, JOHN P. DALY, and JACOB SHAMBERG, of counsel,) all of Chicago, for cross appellees.

EDWARD J. BARRETT, *pro se.*

Mr. JUSTICE SIMPSON delivered the opinion of the Court:

The Progressive Party applied to the defendants, Michael J. Flynn and others, individually, and in their official capacity, in apt time for information whereby it could nominate candidates for the various offices in Cook County to be voted for at the primary election to be held April 13, 1948, and was advised by such officials that the Progressive Party, as a party, was not qualified to be placed upon the primary election ticket and was not an established political party legally entitled to nominate can-

didates at said primary election. The plaintiffs thereupon sought a declaratory judgment in the circuit court of Cook County adjudging that they were entitled to the right to participate in said primary election as an established political party. The court entered judgment against plaintiffs and an appeal to this court followed.

In *Progressive Party* v. *Flynn,* 400 Ill. 102, we reversed the Cook County circuit court and held that the Progressive Party is an established political party in Cook County and in each of the twelve congressional districts within said county, and as such was entitled to participate in said primary election and to nominate candidates to be voted upon in the general election of November 2, 1948. We remanded the cause, whereupon the circuit court entered a declaratory judgment conforming to our opinion.

It is alleged that, through no fault of the Progressive Party or any of its members, the names of its candidates for the Progressive Party nominations and the names of nominees for ward committeemen were not printed upon the April 13, 1948, primary election ballots, and no such ballots were in fact printed and distributed. Not being able to have these names printed on the ballot and nominations made at the primary election, the Progressive Party and its leaders have deemed all of the Progressive Party nominations for the November 2, 1948, general election to be vacant within the purview of section 61 of article 7 and section 17 of article 8 of the Illinois Election Code (Ill. Rev. Stat. 1947, chap. 46, pars. 7-61 and 8-17,) the former of which provides that where a nomination becomes vacant it shall be filled by "the managing committee (or senatorial committee in case of a candidate for State Senator or Representatives in the General Assembly) of the respective political party for the territorial area in which such vacancy occurs, * * *."

The defendants take the position that there are no vacancies to be filled and they have refused to receive the

committee's nominating papers for Progressive Party candidates in Cook County, Chicago, and the senatorial districts within Cook County. They argue that even if vacancies do exist the party's said committees became *funtus officio* after the April, 1948, primary, even though no Progressive Party candidates were nominated and cannot therefore fill the vacancies.

Plaintiffs filed a petition for further relief in the circuit court of Cook County asserting that there were statutory vacancies because of the failure of the Progressive Party to nominate candidates at the 1948 primary election and that their committees have authority to fill such vacancies and prayed for an order requiring defendants to print the names of their candidates on the ballot, etc. Motions in the nature of demurrers to this petition resisting the plaintiffs' contentions were filed by the defendants, and on June 8, 1948, the circuit court sustained the position of the plaintiffs, overruled the defendants' motions and entered an order commanding the defendants to print the names of the persons nominated by the Progressive Party's managing committees on the November 2, 1948, general election ballots under the label "Progressive Party." The circuit court, however, failed to enter an order declaring the Progressive Party to be integrated with a statewide party of the same name that was attempting to place names for United States Senator and State officials on the statewide ballots and for other relief requested by plaintiffs.

On the same day the order was entered, the Secretary of State, through the Attorney General of the State, filed a notice of appeal to the Supreme Court. On June 16, 1948, the county and city election officials filed notice of appeal to the Appellate Court for the First District. The following day the plaintiffs filed notice of cross appeal to this court. Transcripts were filed in both the Appellate Court and the Supreme Court, and the case on appeal was docketed in both courts. Plaintiffs asked us to order the

case transferred from the Appellate Court here and the defendants who appealed to the Appellate Court challenged our jurisdiction, the claim being on one side that the Supreme Court has exclusive jurisdiction of the appeal and on the other side that the jurisdiction rests solely in the Appellate Court.

On August 19, 1948, in vacation, a majority of the members of this court granted leave to plaintiffs to file a petition of the Progressive Party for transfer of the cause from the Appellate Court and for other relief, and we ruled defendants to plead thereto or file answer on or before August 27, 1948. On that day the defendants filed a reply under special appearances challenging our jurisdiction on review. An early decision of the matters involved was requested in view of the short period of time before election and during which time ballots must needs be printed and the names included thereon certified. Accordingly, on September 7, 1948, this court made an announcement to the effect that, a franchise being involved, exclusive jurisdiction was vested in the Supreme Court and that any acts taken by the Appellate Court on appeal to it were void, and we ordered the Appellate Court to transfer the cause to this court. We also held that the *supersedeas* issued by the Appellate Court was void and of no effect and that the decision of the lower court remained and was effective until our further order in the matter. The parties were given until September 17, 1948, for the filing of any other and further briefs. Further briefs were filed by each side and the case argued orally at our September, 1948, term.

In arguing against our jurisdiction the defendants say: "The nature of the individual elector's right to vote is not in issue. Obviously, the constitutional and statutory qualifications which entitle citizens to vote are not here involved. That which is truly in issue in the instant case is the authority of a political party to fill alleged vacancies." It will be noted in the *Flynn case*, 400 Ill. 102, the individual

elector's right to vote was not directly in issue; the main question there was, had the Progressive Party become an established political party? Our jurisdiction was questioned in that case, and we were asked to transfer the case to the Appellate Court. In that case we said: "The real question involved in this case is the right of those who are members of the Progressive Party, and of the plaintiff George Cermak, individually and as a member of the party, to vote in the April 13, 1948, primary, for candidates under the label of Progressive Party. If the relief prayed for in the complaint is granted, plaintiff Cermak may vote for Progressive Party candidates in the April primary, as may others who are members of such party, but, if relief is denied, Cermak has been deprived of the right or opportunity to vote under such party label. The right to vote in an election constitutes a franchise, (*United States of America* v. *Hrasky,* 240 Ill. 560,) which would give us jurisdiction of this appeal. In the *Hrasky case* it is held that a court passing upon the right of the individual to be naturalized sufficiently involved his right to vote in elections so as to involve a franchise allowing a direct appeal to this court."

In *People ex rel. Powell* v. *Hartley,* 170 Ill. 370, we entertained jurisdiction when the county clerk refused to place the nominees certified to him on the official ballot for the reason that the certificate was not filed thirty days before the day of the election. The general committee of the party then filled the alleged vacancies by nominating the same nominees for the same offices, respectively. The nominations thus made by the committee were duly certified and the certificate filed with the county clerk but that officer still refused to place the names of such nominees on the official ballot. We awarded the writ of *mandamus* as prayed, compelling the county clerk to print those names on the ballot. In that decision we said: "The petition shows sufficient grounds for the allowance of the writ. To hold

otherwise would place it within the power of the officials charged with the duty of printing the ballots, to disfranchise, for all practical purposes, a great number,—perhaps a majority,—of the legal voters in their counties, * * *."

The reason for refusing the nominating papers is not material in considering the question of jurisdiction. The nominating papers in the present case were refused for a different reason than the one given in the *Hartley case,* but the principle involved is the same. By refusing to accept those papers a number of voters would be denied their right to vote for Progressive Party candidates. In other words, in the present case should the plaintiffs' position be upheld, the names of their nominees will be printed on the ballot and the voters will be given an opportunity to vote for them. Should the defendants prevail in their contention the proposed names of nominees will not be printed on the ballot and the voters will not have an opportunity to vote for them. It is not the means through which the result is sought that determines whether or not a franchise is involved; but it is the result sought and the effect of its determination which so determines. It seemed to us that the substance of the controversy must and did involve a franchise and we therefore held that this court had jurisdiction of the appeal. That being our opinion, it followed that the Appellate Court did not have jurisdiction of the appeal and all that it did in the case was a nullity, including the granting of a *supersedeas.* All the power it had on appeal to it was to have transferred the cause to this court. *People ex rel. First Nat. Bank* v. *Kingery,* 368 Ill. 205.

Our jurisdiction over the case was complete and exclusive and did not depend upon the cause being transferred here by the Appellate Court. It had been invoked and was operating when the case was appealed to the Appellate Court and when the *supersedeas* was issued by that court. Under the law that court could not issue nor cause to be issued any order, writ or paper which would be binding

upon us or any party litigant. All its orders or acts in this cause are *coram non judice* and ineffectual for any purpose. *People* v. *Kingery*, 368 Ill. 205; *Schmidt* v. *Barr*, 328 Ill. 365; *Kowalczyk* v. *Swift & Co.* 317 Ill. 312.

The defendants contend that the Attorney General by reason of statements in his brief has abandoned his notice of appeal to this court and the appeal itself and therefore has wrested from this court the jurisdiction it acquired upon the filing of such notice. They also contend that the notice of appeal filed by the Progressive Party as cross appellants to the notice of appeal filed by the Attorney General is no longer effective and must fail because of the following language used by that official in his brief: "The Attorney General having, as attorney for Edward J. Barrett, Secretary of State, herewith presented every possible ground for reversal which could be urged by said appellant, but, under his higher, greater and paramount duty to the people, having, as attorney for the people of the State of Illinois, likewise presented the contrary considerations which lead him irresistibly to the conclusions that the plaintiffs were and are entitled to all of the relief which they sought and were granted below and that the order of the trial court, from which this appeal has been prosecuted, was and is wholly without error;—prays that this Honorable Court consider the matters and things raised by this appeal and affirm the judgment below." The defendants cite no authority in support of their contention. When our jurisdiction attaches in a given case we cannot thereafter be deprived of it by a concession of one of the parties concerning the rights of the other. The Attorney General has not abandoned his appeal but states that he has presented every possible ground for reversal which could be urged and has likewise presented the contrary considerations. His position may be persuasive in deciding the issues but cannot be held to be an abandonment of his appeal or

to be such as to deprive this court of further jurisdiction to hear the appeal.

We must now decide whether or not a "vacancy" exists in the nomination, and if the committee's nominating papers for Progressive Party candidates in Cook County, Chicago, and the senatorial districts within Cook County, are valid. Plaintiffs say that under sections 7-61 and 8-17 of the Election Code, provision is made for the filling of the vacancy in a nomination resulting from the fact that there has been no original nomination, while the defendants contend that the statute applies solely to a vacancy following a nomination already made. These sections are similar and the pertinent part of section 7-61 reads "In case a candidate who has been nominated under the provisions of this Article 7 shall die before election, (whether death occurs prior to, or on or after the date of the primary) or decline the nomination, or should the nomination for any other reason become vacant, the managing committee (or senatorial committee in case of a candidate for State Senator or Representative in the General Assembly) of the respective political party for the territorial area in which such vacancy occurs, shall nominate a candidate or candidates of the respective party to fill such vacancies on the ticket." The same section then provides for the number of votes each representative on the managing committee shall have, which provision begins with these words: "In the proceedings to nominate a candidate to fill a vacancy or to fill a vacancy in a nomination, * * *." These last-quoted words seem to indicate an intention to cover two contingencies which may arise, (1) the necessity for nominating a candidate to fill a vacancy, and (2) the necessity of filling a vacancy in a nomination.

Referring to the above first-quoted provision of this section, we find the same two contingencies provided for, (1) the necessity of filling a vacancy in case a candidate

shall die or decline nomination, and (2) the necessity of filling a vacancy should the nomination become vacant. The nomination becomes vacant when there is a failure to nominate. It would seem from a study of this section that the legislature intended to provide for the filling of a vacancy in any office caused by death or declination of the nominee and also for the filling of the nomination if for any reason it should become vacant.

Many foreign jurisdictions have had similar questions before them but in each instance the decision is controlled by the particular State statute. The defendants cite a number of cases from other States to the effect that there can be no vacancy in a nomination until there has first been a nomination. Other States take the contrary view. Indiana has held that a person may be nominated to fill a vacancy caused by failure to make an original nomination. *State ex rel. Hopper* v. *Board of Election Commissioners* (1925) 196 Ind. 472, 149 N.E. 69, holds that under an act providing for the filling of vacancies when, as a result of a withdrawal or withdrawals, "or for any other reason, there is no candidate for office at the general election," a vacancy might be filled by the city central committee of a political party, although no candidate was nominated in the primary election. It was urged against such conclusion that the statute provided for the filling of a vacancy only when the nomination had first been made in the manner provided by the primary law and a vacancy resulted by reason of the death or withdrawal or removal of a candidate. The court there held that laws should be so construed as to give them effect, and to give effect to every word and provision thereof, saying: "The word 'vacancy' as applied to an office has no technical meaning. An existing office without an incumbent is vacant. There is no basis for the distinction that it applies only to an office vacated by death, resignation, or otherwise."

Alabama has held that a vacancy was created where no one qualified for nomination in a primary election, the statute providing that a vacancy might be filled where it occurred either by death, resignation, revocation, or "otherwise." (*Blackwell* v. *Hawkins,* 226 Ala. 149.) In *State* v. *Wells,* 92 Neb. 337, it was held that if a political party at its primary made no nomination of a candidate for election to an office, a vacancy had occurred within the meaning of the statute providing for the filling of vacancies, and that the proper party committee might fill that vacancy.

In the *Hartley case,* 170 Ill. 370, where the county clerk refused to have the names of candidates printed on the official ballot because in his opinion the certificate of nomination was inoperative under the statute, we held that a vacancy existed which should be filled in accordance with the applicable statute.

It is our opinion that the legislature intended to provide for the filling of nominations by established political parties in cases such as the one now before us. If the legislature so intended, then the only machinery for the filling of the nomination was that provided through the committees selected by the Progressive Party for that purpose, and it is our opinion that the committees had power and were authorized to select the party's nominees to appear on the ballot at the general election November 2, 1948.

Plaintiffs, cross appellants here, requested the trial court to order defendants to recognize the right of the Progressive Party in Cook County to assent to and to lend its support to the organization of a new State-wide political party bearing the name "Progressive Party" throughout the State of Illinois and to enter an order declaring the Progressive Party to be integrated with a State-wide party of the same name that was attempting to place names for United States Senator and State officials on the State-wide ballots, etc. Plaintiffs have not argued that phase of the

case nor is the record such as to require our opinion in that connection.

Other points have been presented and argued which are not necessary to be discussed as those already decided are sufficient to dispose of the case. We adhere to and confirm our order as heretofore announced in this cause on September 7, 1948, and, having considered all matters urged by the parties herein, we are of the opinion that the circuit court of Cook County was right in its decision and the same is therefore affirmed.   *Judgment affirmed.*