(No. 36058.—

THOMAS G. OSBORN *et al.*, Appellees, *vs.* THE VILLAGE OF RIVER FOREST *et al.*, Appellants.

*Opinion filed January 20, 1961.*

CHARLES L. MICHOD, of Chicago, for appellants.

KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, of Chicago, (HOWARD ELLIS, KEITH MASTERS, DON H. REUBEN, and GEORGE D. NEWTON, JR., of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal by the village of River Forest from a decree of the superior court of Cook County finding a solicitor's ordinance enacted by the village to be in violation of the guarantees of freedom of speech and freedom of the press accorded by both the Federal and State constitutions, insofar as it applies to persons engaged in the business or occupation of soliciting newspaper subscriptions. The trial court has certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court. Ill. Rev. Stat. 1959, chap. 110, par. 75(1)(c).

The ordinance in question, which is aimed at the regulation and licensing of peddlers, solicitors, itinerant vendors and canvassers, defines a solicitor as follows: "A solicitor is defined as a person engaged in business for profit, going from place to place in the village soliciting subscriptions for books, magazines, newspapers or other periodicals or publications, or selling or offering for sale any commodity or

article, when delivery is not made at the time such sale or subscription is made or entered into, or going from place to place in the village offering to furnish services or inviting orders for services."

By section 8.151 of the ordinance, it is provided that every solicitor must register with the police department, prior to engaging in such activity, and furnish in writing: (1) name and address; (2) by whom employed or with whom associated; (3) the length of such employment or association; (4) registrant's place of residence and nature of employment during the preceding 12 months; (5) nature of the service for which the registrant proposes to canvass the village; (6) an estimate of the length of time the registrant will pursue his activities in the village; (7) names and addresses of three persons who know the registrant and can verify his information; and (8) a personal description of the registrant, including finger prints and other marks of physical identification. Thereafter, it is provided that the police department shall have 20 days in which to verify the facts stated by the registrant; that it shall be unlawful for the registrant to solicit within 20 days of registration unless expressly authorized by the department prior to that time; that it shall be unlawful for a registrant to solicit if any of the information is false, or adverse to his character; and that every solicitor shall be required to wear a badge with the words: "River Forest Registered Canvasser," together with a serial number, said badges to be obtained from the police department upon a refundable deposit of $3 being made.

Further sections prohibit soliciting at homes posted with signs bearing the legend "No Peddlers," "No Solicitors," "No Canvassers," or words of similar import, and prohibit soliciting before sunrise or after sunset.

The present proceeding had its beginning when Thomas G. Osborn, an employee of Newspapers Readers Agency, Inc., a wholly owned subsidiary of the Tribune Company,

was arrested by village police at 6:15 P.M. on January 15, 1960, while soliciting newspaper subscriptions in a residential district, and charged with having violated the ordinance by failing to register. With him were five 13-year-old boys, all nonresidents of the village, who were seeking to sell Tribune subscriptions and to win prizes based on the number of subscriptions sold. On April 14, 1960, Osborn and the agency which employed him started this proceeding for a declaratory judgment that the ordinance is unconstitutional and void, and for injunctive relief. The decree appealed from found for the plaintiffs in both respects.

Relying principally on *Breard* v. *Alexandria,* 341 U.S. 622, 95 L.ed. 1233, where a comparable ordinance that had been violated by a magazine subscription crew was held not to violate the due process clause or the Federal constitutional guarantees of free speech and free press, the defendant village insists that its ordinance is likewise constitutional. The plaintiffs, however, urge that the present ordinance is far more onerous than those which have met with Federal approval, and contend, on the basis of *Village of South Holland* v. *Stein,* 373 Ill. 472, and *City of Blue Island* v. *Kozul,* 379 Ill. 511, that despite the Federal view, the ordinance is nonetheless invalid because the Illinois constitutional guarantees of free speech and free press are broader in sweep than those of the Federal constitution.

Although the parties have relegated the issue to one of secondary importance, our initial concern must be with the conflicting claims as to whether the Revised Cities and Villages Act has granted to municipalities the authority to undertake the regulation of newspaper solicitors. The judicial power to determine the constitutionality of legislation is to be exercised only when it is essential to the disposition of a case, (*Donoho* v. *O'Connell's, Inc.,* 18 Ill.2d 432, 436,) and even where we acquire jurisdiction of a case because a constitutional question is involved, we will not consider the constitutional issues if the cause can be determined on other

grounds. (*City of Detroit* v. *Gould,* 12 Ill.2d 297, 304; *Illinois Central Railroad Co.* v. *Commerce Com.* 411 Ill. 526; *People ex rel. Downs* v. *Scully,* 408 Ill. 556.) Manifestly, if the village had no authority to regulate newspaper solicitors, the constitutionality of its ordinance in such respect is not reached.

Section 23—54 of the Revised Cities and Villages Act, which has been in the statute books in substantially the same form since 1871, (see: Ill. Rev. Stat. 1959, chap. 24, par. 23—54; Laws of 1871-72, p. 218,) grants to municipalities the power: "To license, tax, regulate, or prohibit hawkers, peddlers, pawnbrokers, itinerant merchants, transient vendors of merchandise, theatricals" etc. Since *Emmons* v. *City of Lewistown,* 132 Ill. 380, decided in 1890, it has been held that the power thus granted did not extend to the regulation of persons taking orders for the future delivery of books, periodicals or other publications. This construction was adhered to and extended in *Village of Cerro Gordo* v. *Rawlings,* 135 Ill. 36, (1890) and was reaffirmed in *Village of South Holland* v. *Stein,* 373 Ill. 472 (1940). Where a statute which has been judicially construed has been re-enacted in substantially the same terms, the General Assembly is presumed to have been familiar with such judicial construction and to have adopted it as part of the law. (*People ex rel. Schlaeger* v. *Reilly Tar & Chemical Corp.* 389 Ill. 434; *Huntoon* v. *Pritchard,* 371 Ill. 36; 34 I.L.P., Statutes, sec. 134.) Here, successive legislatures for almost 70 years have permitted the pertinent language of section 23—54 to remain unaltered, despite the fact it was expressly stated in the *Emmons case:* "While it must be conceded that the evil resulting from the method of canvassing from house to house may be great,—indeed, as great as that resulting from the vocations authorized by the statute to be taxed and regulated, and, indeed, may be even greater,—yet, if the legislature, as we are constrained to hold, has not conferred upon cities and villages the power to tax or regulate the same, if relief is to

be obtained, resort must be had to the legislative department of the State." 132 Ill. at 385.

The defendant concedes that villages have not been given the express power to regulate newspaper solicitors but, on the basis of our holding in *Concrete Contractors' Association of Greater Chicago* v. *Village of La Grange Park*, 14 Ill.2d 65, to the effect that authority for the enactment of an ordinance may be derived either from a single power or from two or more municipal powers in combination, insists that the absence of an express power is not controlling and that authority to regulate newspaper solicitors may be implied from other powers which have been expressly granted. Specifically, it is urged that such authority is implicit in the express grants of power to regulate the use of streets, (Ill. Rev. Stat. 1959, chap. 24, par. 23—10,) to regulate the use of streets for amusements ( par. 23—16) ; to regulate the use of sidewalks (par. 23—20) ; to regulate traffic and sales upon streets, sidewalks, public places and municipal property (par. 23—27) ; to license, tax, regulate or prohibit hawkers, peddlers, etc. (par. 23—54) ; to define, prevent and abate nuisances (par. 23—61 ) ; to pass and enforce all necessary police ordinances ( par. 23—105) ; and to pass all ordinances proper or necessary to carry into effect the powers granted to municipalities (par. 23—106).

Defendant does not show, however, (and in this respect the case may be distinguished from *Concrete Contractors* and the cases cited therein,) just how the regulation of solicitors for newspaper subscriptions is reasonably necessary to effectuate the exercise of the express powers granted, or how, by implication, we may overcome the long legislative acquiescence in the judicial construction that the regulation of those soliciting orders for the future delivery of books, periodicals or other publications was not embodied in the express powers granted by section 23—54. The whole issue, we believe, is resolved by these words appearing in *Emmons* v. *City of Lewistown*, 132 Ill. 380, 384: "To concede

that the power of the city to license, tax or regulate the canvassing for books or publications within the city is doubtful, is to deny the power. 'Any fair, reasonable doubt concerning the existence of power is resolved against the corporation, and the power is denied.' 1 Dillon on Mun. Corp. 55—251." Again in *City of Chicago* v. *Chicago Great Western Railroad Co.* 348 Ill. 193, 195, this court said: "Cities have no inherent powers but when any of their acts are called in question must show a statute authorizing their exercise of power, and such statutes are strictly construed, so that any fair doubt of the existence of the power must be resolved against the municipality." Such a doubt, with respect to the authority of the village to regulate those who solicit subscriptions for newspapers, exists in this case.

We therefore conclude that the defendant village was without authority to enact its ordinance insofar as it applies to solicitors for newspaper subscriptions and, on this basis, the decree of the superior court is affirmed.

*Decree affirmed.*