WILLIAM M. PHELAN *et al.*, Petitioners-Appellants, v. COUNTY OFFICERS ELECTORAL BOARD *et al.*, Respondents-Appellees.

First District (2nd Division) Nos. 1—92—2880, 1—92—2906 cons.

Opinion filed December 15, 1992.

---

*Justice Lorenz concurred in this opinion prior to his retirement.

Phelan, Doyle, Bolotin & Burke, Ltd., of Chicago, for appellant William M. Phelan.

Michael W. Rathsack, of Chicago, for appellant Lester Bonaguro.

Bledsoe & Touhy, of Chicago (Michael N. Bledsoe, of counsel), for appellee Arthur L. Janura.

Michael E. Lavelle, of Oak Park, for appellee Edwin A. Gausselin.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Two Republican judicial candidates claim opposing Democratic judicial candidates were not eligible to be placed on the November 3, 1992, general election ballot because they were nominated by party resolution to fill vacancies in nomination after the primary, rather than at the primary election or by petition. The vacancies were caused by the absence of Democratic primary candidates in these

races.[1] The circuit court affirmed the County Officers Electoral Board (Electoral Board) decision to allow the Democratic candidates' names to be placed on the ballot, from which review is sought.

The issues on appeal include whether (1) the Electoral Board had jurisdiction to rule on the constitutionality of a statute; (2) the circuit court had original jurisdiction to rule on the constitutionality of a statute; (3) article VI, section 12(a), of the 1970 Illinois Constitution (section 12(a)) bars a political party from filling vacancies in nomination for judicial office by party resolution pursuant to section 7—61 of the Election Code (Ill. Rev. Stat. 1991, ch. 46, par. 7—61 (amended 1992) (section 7—61)); and (4) a political party can fill vacancies in nomination for judicial office under section 7—8(g) (Ill. Rev. Stat. 1991, ch. 46, par. 7—8(g) (amended 1992) (section 7—8(g))) and section 7—61 of the Election Code.

■■ This case was orally argued and taken under advisement four days prior to the general election; we take judicial notice that the Republican candidates, William Phelan and Lester Bonaguro, were elected on November 3, 1992. The issues raised with respect to the application of section 7—61 are longstanding and have not been resolved by the courts or the legislature,[2] as will be noted later in this opinion. Because the issues involve public concerns, an authoritative guide for future controversies is needed, and there is a likelihood of recurrence, we deem this case to fall within the public interest exception to mootness. (*Kohan v. Rimland School for Autistic Children* (1981), 102 Ill. App. 3d 524, 527, 430 N.E.2d 139 (and cases therein collected).) We examine the issues on their merits.

William Phelan, a Republican candidate in the March 17, 1992, primary election for circuit judge for the 15th judicial subcircuit, judgeship A, Cook County, was elected as the Republican nominee to run for that office in the general election to be held November 3, 1992. No Democratic candidate ran in that primary election, and none was nominated by petition. Following the primary election, on May

---

[1] It should be noted that a vacancy in nomination can occur not only by a failure to nominate a judicial candidate in the primary election, but also by a candidate's death or declination following nomination in the primary. See Ill. Rev. Stat. 1991, ch. 46, par. 7—61 (amended 1992).

[2] Section 7—61 was recently amended to provide that "[v]acancies shall be filled by the *officers of a local municipal or township political party as specified in subsection (h) of Section 7—8, other than a statewide political party, that is established only within a municipality or township,*" an amendment which does not affect the issues in this case. (Emphasis in original to denote additions.) Pub. Act 87—1052, eff. Sept. 11, 1992 (amending Ill. Rev. Stat. 1991, ch. 46, par. 7—61); see also *infra* note 6.

14, 1992, the Democratic party nominated Edwin Gausselin as its candidate for that office. Gausselin was nominated by party resolution, which was purportedly authorized by section 7—61.

Concurrently, Lester Bonaguro, a Republican candidate in the primary election for circuit judge for the 13th judicial subcircuit, judgeship B, Cook County, was elected as the Republican nominee to run for that office in the general election to be held November 3, 1992. As in Phelan's case, no Democratic candidate ran in that primary contest, and none was nominated by petition. Following the primary election, on May 14, 1992, the Democratic party similarly nominated, by party resolution, Arthur Janura as its candidate for that office.

In separate proceedings, Phelan and Bonaguro filed objections to the respective Democratic nominees' placement on the general election ballot with the State Board of Elections. Both contended that the nomination was unconstitutional because section 12(a) requires candidates for judicial office to be nominated at primary elections or by petition, not by party resolution. In the alternative, Phelan alone claimed the party resolution filed for Gausselin failed to comply with section 7—61. .

The State Board of Elections transferred both proceedings to the Electoral Board, pursuant to section 10—8 of the Election Code (Ill. Rev. Stat. 1991, ch. 46, par. 10—8). The Electoral Board, ruling it was without jurisdiction to determine the constitutionality of the Election Code, presumed that it was constitutional, overruled both Phelan's and Bonaguro's objections, and ordered the names of Gausselin and Janura to be printed on the ballot for the general election to be held November 3, 1992.

Phelan and Bonaguro appealed their respective Electoral Board decisions to the circuit court of Cook County pursuant to section 10—10.1 of the Election Code (Ill. Rev. Stat. 1991, ch. 46, par. 10—10.1). After hearing joint oral argument, the circuit court affirmed both Electoral Board decisions. Finding it had jurisdiction to decide the constitutional issue, the circuit court upheld the constitutionality of the Election Code, holding that section 12(a) does not bar a political party from filling vacancies in nomination under section 7—61. Phelan and Bonaguro each appeal. The appeals were consolidated.

I

Appellee Janura initially contends that the Electoral Board was without jurisdiction to rule on the constitutionality of the statute.

■ Janura correctly notes that an electoral board's function is limited to determining whether a challenged nominating petition com-

plies with the provisions of the Election Code. (*Wiseman v. Elward* (1972), 5 Ill. App. 3d 249, 257, 283 N.E.2d 282 (*Wiseman*); see *Troutman v. Keys* (1987), 156 Ill. App. 3d 247, 252, 509 N.E.2d 453 (*Troutman*).) Moreover, an electoral board is without authority to decide constitutional issues. (See *Wiseman*, 5 Ill. App. 3d at 257.) Here the Electoral Board ruled it must accept the Election Code as constitutional; it then overruled Bonaguro's objections that the statute was unconstitutional and ordered Janura's name printed on the general election ballot. Under these circumstances, this argument is without merit. The Electoral Board did not decide the constitutionality of the Election Code, but merely accepted it as constitutional, and did not exceed its jurisdiction.

II

Janura next argues that the circuit court lacked jurisdiction to rule on the constitutionality of the statute on administrative review, but was required to limit its review to the Electoral Board's ruling that it lacked jurisdiction to decide the constitutionality of the statute.

■ The circuit court held that, pursuant to *Troutman*, it possessed the jurisdiction to rule on the constitutionality of the State statute. In *Troutman*, we held that "where the administrative agency's decision gives rise to pleaded issues which could not have been considered by the agency, but the record presented to the circuit court permits a fair determination of such issues, then the scope of review by a court of original jurisdiction extends to all questions of law and fact presented under the pleadings by that record." *Troutman*, 156 Ill. App. 3d at 253.

The circuit court's ruling here that it possessed original jurisdiction to decide the constitutional issue was proper.

III

Phelan and Bonaguro (jointly hereinafter appellants) contend that a political party cannot bypass the constitutionally mandated primary election process by delaying the nomination of a judicial candidate until after the primary election. Appellee Gausselin, in response, correctly points out that there is no evidence in the record to support the charge that the Democratic party delayed the nominations at issue in order to bypass the primary election. For that reason, the issue is better characterized as whether section 12(a) bars a political party from filling vacancies in nomination for judicial office by party resolution pursuant to section 7—61.

This issue was raised but not decided in *Thurston v. State Board of Elections* (1979), 76 Ill. 2d 385, 387, 392 N.E.2d 1349 (*Thurston*). There the supreme court ruled that *laches* applied because this issue had not been raised until after the general election. (*Thurston*, 76 Ill. 2d at 391.) We shall return to *Thurston* later in this opinion.

■ Section 12(a) provides:

"Supreme, Appellate and Circuit Judges shall be nominated at primary elections or by petition. Judges shall be elected at general or judicial elections as the General Assembly shall provide by law. A person eligible for the office of Judge may cause his name to appear on the ballot as a candidate for Judge at the primary and at the general or judicial elections by submitting petitions. The General Assembly shall prescribe by law the requirements for petitions." (Ill. Const. 1970, art. VI, §12(a).)

Appellants argue that section 12(a) unambiguously requires that nomination to judicial office occur only at primary elections or by petition, and therefore not by party resolution as authorized in section 7—61.

Appellees Gausselin and Janura (jointly hereinafter appellees) maintain that the language of section 12(a) encompasses an entire primary election process beyond the election itself, which necessarily includes authorization for political parties to fill vacancies in nomination for judicial candidates. Appellees assert that a primary election is a compulsory process by which individual party members select the party candidates who will run in the general election; it is only when a vacancy in nomination exists after the primary election that the party, acting as an entity, may fill it. Appellees cite *Progressive Party v. Flynn* (1948), 401 Ill. 573, 581-82, 82 N.E.2d 476, for support.

Section 7—61 provides in part that vacancies in nomination "shall be filled by the managing committee *** of the respective political party for the territorial area in which such vacancy occurs." (Ill. Rev. Stat. 1991, ch. 46, par. 7—61.) Section 7—61 also provides that such a vacancy occurs by reason of the death of a nominee, the declination of nomination of vacancy, or "for other reasons." Appellants maintain that section 7—61 applies to all vacancies in nomination except judicial. They note that section 7—61, and section 7—7 (Ill. Rev. Stat. 1991, ch. 46, par. 7—7 (amended 1992)), which authorizes the committees referred to in section 7—61, describe all possible political districts for legislative positions, but make no reference to judicial committees. Appellants acknowledge that section 7—8(g) creates a circuit court committee, but claim the Election Code fails to give it any power or duties. Appellants theorize that the legislature declined to apply sec-

tion 7—61 to judicial vacancies in nomination because to do so would have been unconstitutional.

Appellees counter that section 7—61 does not violate section 12(a). They note that section 7—1 (Ill. Rev. Stat. 1991, ch. 46, par. 7—1) explicitly states that article 7 of the Election Code, which includes section 7—61, applies to the nomination of judicial candidates.

Each side here claims that the constitutional history of section 12(a) supports their respective arguments. Appellants insist that the framers intended to remove the power to nominate candidates for judicial office from political party bosses and give it to the electorate. Appellees urge that, in adopting section 12(a), the framers and the voters understood it to embody the entire primary election process, including political party power to fill vacancies in nomination for judicial candidates.

The constitutional history of section 12(a)[3] reveals that the 1870 Illinois Constitution, as amended by the 1962 judicial article, provided for the nomination of judges by "party convention or primary." (Ill. Const. 1870, art. VI (1964), §10 (eff. Jan. 1, 1964); 7 Record of Proceedings, Sixth Illinois Constitutional Convention 2674 (Proceedings).) During the 1970 Constitutional Convention (Convention), a judiciary committee majority recommended, in general, that judges be appointed.[4] A minority proposal retained judicial elections, but recommended that all judges be "nominated by party primary elections." (6 Proceedings 1069.) The minority proposal recommended primary elections in place of party conventions to remove the criticism that "the convention method vests too much power in the hands of party leaders and deprives the voters of any meaningful voice in choosing their judges." (6 Proceedings 1091.) It explained: "By this change any person who wishes to run as a candidate may do so, whether or not he receives party endorsement or support, provided only that he fulfills the minimum petition signature requirement" to be placed on the primary ballot; thereby "[t]he field of potential candidates is thus opened up, and the electorate is given a choice among all the candidates who seek judicial office." 6 Proceedings 1091-92.

---

[3]See generally Cohn, *The Illinois Judicial Department—Change Effected by Constitution of 1970*, 1971 U. Ill. L.F. 355, 394-95.

[4]It specifically recommended that supreme and appellate court judges be "appointed by the Governor from nominees submitted by Judicial Nominating Commissions," and circuit judges be nominated "as provided by law." (6 Proceedings 942-43.) The majority proposal, with respect to circuit judges, purposely authorized the party convention method as a permissive legislative option. 6 Proceedings 999, 1029-30.

On motion by Delegate (later Appellate Court Justice) John M. Karns, presented on the Convention floor, the minority proposal was amended to provide for the nomination of judges "in primaries or by petition," which passed.[5] (3 Proceedings 2373-74.) The amended minority proposal, therefore, adopted the minority's recommendation of nomination at primary elections, and also introduced the concept of nomination by petition to accommodate independent candidates. The debates also reveal that the delegates expressly understood this proposal to preclude nomination by party convention. (3 Proceedings 2373-75; 5 Proceedings 3967-69; see also 7 Proceedings 2761.) After additional amendments, this proposal became known as Proposition 2A.

The Convention also adopted a separate proposition, Proposition 2B, which provided for the appointment of judges. Both propositions were submitted to the electorate in the 1970 constitutional referendum. (7 Proceedings 2758-63.) All registered voters were provided with a brief explanation of Proposition 2A (7 Proceedings 2667):

"Under Article VI, Sections 10 and 11, of the 1870 Constitution, all judges are nominated at political party conventions and elected at the general elections. ***
*** 

If, at the December 15, 1970, special election, the voters approve [Proposition] #2A, candidates for judge will continue to be elected, but the method of nomination will be changed. The existing 'party convention' method for the nomination of judges will be replaced by primary elections or by the method of petition." (7 Proceedings 2761.)

The voters approved Proposition 2A. As a consequence, the 1970 Constitution presently provides for the election of judges "nominated at primary elections or by petition." Ill. Const. 1970, art. VI, §12(a).

From the foregoing it is clear that both the framers and the electorate intended to remove the power to nominate candidates for judicial office from political parties and give it to the electorate at a primary election, forbidding nomination of judicial candidates by party convention. (7 Proceedings 2761; 3 Proceedings 2373-75; 5 Proceedings 3967-69.) A party's primary election was to be made accessible to all judicial candidates interested. 6 Proceedings 1091-92; 3 Proceedings 2373-75.

---

[5]This amendment also applied to circuit court judges in the majority proposal as it was then structured.

The question in the present case, however, is whether the convention intended to prevent political parties from filling vacancies in nomination *after* the primary election. Nothing in the constitutional history demonstrates that the delegates ever considered or discussed specifically the filling of vacancies in nomination.

Appellees claim that the framers understood section 12(a) to embody the entire primary election process, not just the primary election day, which necessarily includes the right of political parties to fill vacancies in nomination for judicial candidates. In support of their argument appellees claim that, in adopting section 12(a), the delegates and the voters understood it to encompass the plenary primary election mechanism, relying upon a segment of Convention floor debate supporting the proposition that judicial candidates are to appear on the general election ballot by the same method as other public officials, such as the governor, legislators, county recorders, and others. (4 Proceedings 2520-21.) We are of the opinion that this debate language shows the framers believed the primary election of judicial candidates would be conducted in the same manner as primary elections for governor and other local officials, implicitly including the right of political parties to fill vacancies in nomination for judicial office by resolution. See also 5 Proceedings 3967-69.

Identifying practical concerns, appellees note that if appellants' interpretation of section 12(a) prevails, then no vacancy in nomination for judicial office could be filled except by special primary election. They claim that the hundreds of party judicial candidates and the limited time available between primary and general elections, if coupled with a requirement that party vacancies in nomination be filled only by special elections, would create not only a nightmare for election officials, but an impossibility. This argument has merit. Without a practical means of permitting political parties to fill vacancies in nomination, the electorate is ultimately deprived of choice.

Appellees also maintain that appellants' restrictive interpretation of section 12(a) violates the first and fourteenth amendments of the United States Constitution and must therefore be rejected. They correctly note that the United States Supreme Court has held that restrictions on access to the ballot burden two fundamental rights, " 'the right of individuals to associate for the advancement of political beliefs,' " and the " 'right of qualified voters' " to cast their votes effectively, and thus the State must have a compelling interest to regulate access to the ballot and then may only use the least restrictive means available. (*Illinois State Board of Elections v. Socialist Workers Party* (1979), 440 U.S. 173, 183-85, 59 L. Ed. 2d 230, 240-42, 99

S. Ct. 983, 990, quoting *Williams v. Rhodes* (1968), 393 U.S. 23, 30, 21 L. Ed. 2d 24, 31, 89 S. Ct. 5, 10.) Appellants' interpretation of section 12(a), if accepted, would bar political parties from filling vacancies in nomination, impacting the two fundamental rights mentioned here.

Countervailing arguments advanced by appellants cite two sources that interpret section 12(a) in support of their position. They note that the State Board of Elections, the State agency empowered to administer election laws and certify candidates (Ill. Const. 1970, art. III, §5; Ill. Rev. Stat. 1991, ch. 46, par. 1A—1), has specifically declared that "[w]here an established political party *** fail[s] to nominate a candidate for any office provided for in Article 7 of 'The Election Code,' this vacancy in nomination may be filled by the proper party committee of the political party, except candidates for Judicial office." (26 Ill. Adm. Code §207.10 (1992).) Appellees correctly rejoin that this Administrative Code section directly contradicts section 7—61 of the Election Code, noting that an administrative agency rule that contradicts a statute is void. See *People ex rel. Polen v. Hoehler* (1950), 405 Ill. 322, 328, 90 N.E.2d 729.

Appellants further seek support from an Illinois Attorney General opinion to the effect that section 7—61 cannot be used to fill vacancies in nomination for judicial office. (1972 Ill. Att'y Gen. Op. 96.) The opinion explained that the 1870 Illinois Constitution provided that judges shall be nominated "by party convention or primary" (Ill. Const. 1870, art. VI (1964), §10), whereas, in contrast, the 1970 Illinois Constitution provides that judges shall be nominated "at primary elections or by petition" (Ill. Const. 1970, art. VI, §12(a)). Consequently, the Attorney General concluded that "Judges are not to be nominated by party conventions." (1972 Ill. Att'y Gen. Op. at 99.) The opinion concludes: "Filling vacancies in nomination by party committees (Ill. Rev. Stat. 1971, ch. 46, par. 7—61) is comparable to nomination by convention, and also prohibited." 1972 Ill. Att'y Gen. Op. at 99.

■ Several principles of constitutional interpretation come into focus here. First, a constitution must have a reasonable and practical interpretation; narrow technical reasoning should not be applied. (*Wolfson v. Avery* (1955), 6 Ill. 2d 78, 94, 126 N.E.2d 701; *People ex rel. Rogerson v. Crawley* (1916), 274 Ill. 139, 142-43, 113 N.E. 119.) Second, constitutional language must be given its plain and commonly understood meaning unless it is clearly evident that a contrary meaning was intended. (*Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 464, 359 N.E.2d 138.) Third, a consti-

tutional provision may be examined in light of the history and condition of the times and the particular problems which the convention sought to address by incorporating such provision into the constitution. (*Client Follow-up Co. v. Hynes* (1979), 75 Ill. 2d 208, 216, 390 N.E.2d 847.) Last, a court will presume that the legislature intended to enact a constitutional statute; accordingly, a court will construe a statute as constitutional if it is reasonable. *Gill v. Miller* (1983), 94 Ill. 2d 52, 56, 445 N.E.2d 330.

■ In ruling on this issue, the circuit court held that interpreting section 12(a) to forbid a political party from filling vacancies in nomination would be "a restrictive interpretation" inconsistent with principles of constitutional interpretation. We agree and affirm.

## IV

■ Phelan submits, in the alternative, that appellee Gausselin was not nominated in compliance with the section 7—61 requirement that party representatives participating in the resolution to nominate be from the territorial area of the judicial subcircuit involved. Gausselin counters that he was nominated by the proper committee, the circuit court county committee established according to section 7—8(g).

Section 7—61 provides in part that vacancies in nomination "shall be filled by the managing committee *** of the respective political party for the territorial area in which such vacancy occurs." (Ill. Rev. Stat. 1991, ch. 46, par. 7—61.) Phelan argues that since the judicial subcircuit involved crosses eight townships, a representative from each of these townships was required to vote. Sections 7—7 and 7—8 define the appropriate managing committees. Section 7—8(g), at the time the vacancies in nomination were filled, provided that the circuit court committee would be composed of the chairman of the county central committees of the counties comprising the judicial circuit. In this case, only Cook County comprises the judicial circuit and Thomas G. Lyons was the chairman of the Cook County central committee. Therefore, Lyons appropriately acted alone.[6]

---

[6]The legislature has recently amended section 7—8(g) of the Election Code in this regard, which provides, in new section 7—8(g—1), that judicial subcircuit committees of each political party in Cook County shall be composed of ward and township committeemen, and further provides a voting formula to be followed. (Pub. Act 87—1052, eff. Sept. 11, 1992 (amending Ill. Rev. Stat. 1991, ch. 46, par. 7—8(g)).) This amendment is not applicable here because the vacancy in nomination was filled on May 14, 1992.

Phelan acknowledges that section 7—8(g) created a circuit court committee, but claims the Election Code failed to give it any power or duties; however, section 7—8(i) gave the committees in section 7—8 "the powers usually exercised by such committees and by the officers thereof, not inconsistent with [article 7]." Ill. Rev. Stat. 1991, ch. 46, par. 7—8(i).

Additionally, Gausselin contends that if the Election Code does not regulate filling vacancies in nomination for judicial candidates, then a political party is left with its "inherent power" to fill the vacancies in any manner it sees fit. This claim is supported by language in *People ex rel. Kell v. Kramer* (1928), 328 Ill. 512, 516-21, 160 N.E. 60. Nevertheless, section 7—1 evinces a legislative intent to regulate the nomination of candidates through article 7 of the Election Code: "Except as herein otherwise provided, the nomination of all candidates for all *** judicial *** [offices] shall be made *in the manner provided in this Article 7*, and not otherwise." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 46, par. 7—1.) Phelan's claim that Gausselin was not nominated in accordance with section 7—61 fails. The Electoral Board decision and the circuit court's holding that Gausselin's nomination met the requirements of article 7 must be affirmed.

In conclusion, we refer to our supreme court's letter to the General Assembly on January 31, 1982, urging the legislature to review procedures for nominating judicial candidates. Referring to *Thurston v. State Board of Elections* (1979), 76 Ill. 2d 385, 392 N.E.2d 1349, the court observed:

"It has been argued in our Court that section 7—61 of The Election Code (Ill. Rev. Stat. 1977, ch. 46, par. 7—61) (Code), as it pertains to filling vacancies in the nomination of judicial candidates at a primary election, is contrary to section 12(a) of article VI of the 1970 Constitution. *Thurston v. State Board of Elections* (1979), 76 Ill. 2d 385. ***

In *Thurston, supra,* one of the political parties failed to nominate at the primary election a candidate for the office of resident circuit judge, and the party's managing committee— the party's county central committee, filled the vacancy by nominating a candidate. That candidate was subsequently elected in the general election, but the validity of his nomination was contested. Our Court deemed it unnecessary to decide the constitutional issue and held that the doctrine of *laches* barred the challenge to the nomination of the successful candidate. 76 Ill. 2d 385, 388.

Nevertheless, we believe it important to note that the official publication of the proposed 1970 Constitution stated in reference to Separate Question No. 2A, which is now section 12 of article VI of the 1970 Constitution, that 'candidates for judge will continue to be elected, but the method of nomination will be changed. The existing "party convention" method for the nomination of judges will be replaced by primary elections or by the method of petition.' 7 Record of Proceedings, Sixth Constitutional Convention 2761. ***

See also 3 Record of Proceedings, Sixth Constitutional Convention 2373-74.

The Supreme Court is cognizant of the General Assembly's most recent amendment to section 7—61 concerning the filling of 'a vacancy in nomination' (1980 Laws of Illinois, vol. 1, pp. 1376-77); however, our Court invites, as we have done in the past, a review of section 7—61 of The Election Code (Ill. Rev. Stat., 1980 Supp., ch. 46, par. 7—61) as it applies to judicial candidates." (Administrative Office of the Illinois Courts, 1981 Annual Report to the Supreme Court of Illinois 22.)

Since the foregoing letter was submitted, section 7—61 has been amended no less than six times, in 1982, twice in 1985, in 1989, in 1990, and again in 1992. In none of the amendments has the General Assembly accepted our court's invitation to review and, presumably, amend the language of section 7—61 as it would have applied in *Thurston* and as it now applies in the present case.

Indeed, by reorganizing section 7—8(g) in 1992 to create a judicial subcircuit committee for each political party in new section 7—8(g—1) (see *supra* note 6), which under section 7—61 would be authorized to fill vacancies in nomination in the subcircuits, the legislature appears to have strengthened appellees' contentions in the present case as well as the circuit court's affirmance of the Electoral Board.

In view of the foregoing circumstances, we affirm the judgment of the circuit court.

Affirmed.

JOHNSON and GREIMAN, JJ., concur.