(No. 74907

LESTER BONAGURO, Appellant, v. THE COUNTY OFFICERS ELECTORAL BOARD *et al.,* Appellees.

*Opinion filed March 18, 1994.*

HEIPLE, J., joined by BILANDIC, C.J., and NICKELS, J., concurring in the judgment.

Michael W. Rathsack, of Chicago, for appellant.

Michael N. Bledsoe, of Bledsoe & Tuohy, of Chicago, for appellee Arthur L. Janura.

JUSTICE FREEMAN delivered the opinion of the court:

The question presented for review is whether article VI, section 12(a), of the Illinois Constitution (Ill. Const. 1970, art. VI, § 12(a)) bars a political party from filling a vacancy in nomination for judicial office by party resolution. We need not reach this constitutional issue, because we hold that article 7 of the Election Code (10 ILCS 5/7—1 *et seq.* (West 1992)) does not authorize such a procedure.

## BACKGROUND

Lester Bonaguro was a Republican candidate in the March 1992 primary election for circuit judge for the 13th judicial subcircuit, judgeship B, Cook County. He was elected as the Republican nominee to run for that office in the November 1992 general election.

No Democratic candidate ran in that primary election and none was nominated by petition. Subsequent to the primary, on May 14, 1992, the Democratic party nominated Arthur Janura as its candidate for that office. Janura was nominated by party resolution, purportedly authorized by section 7—61 of the Election Code (10 ILCS 5/7—61 (West 1992)).

Bonaguro filed objections to Janura's placement on the general election ballot with the State Board of Elections. He contended that Janura's nomination was unconstitutional. Bonaguro argued that article VI, section 12(a), of the Illinois Constitution (Ill. Const. 1970, art. VI, § 12(a)) requires candidates for judicial office to be nominated at primary elections or by petition, not by party resolution.

The State Board of Elections transferred the matter to the Cook County officers electoral board. (See 10 ILCS 5/10—8 (West 1992).) The electoral board overruled Bonaguro's objections and ordered that Janura's name be printed on the ballot for the November 1992 general election.

Bonaguro sought judicial review of the electoral board's decision in the circuit court of Cook County. (See 10 ILCS 5/10—10.1 (West 1992).) He named as respondents the Board of Elections, the electoral board, and Janura (appellees). The trial court confirmed the electoral board's decision. The court held that the Illinois Constitution does not bar a political party from filling judicial vacancies in nomination under Election Code section 7—61. The appellate court affirmed. (240 Ill. App. 3d 368.) We allowed Bonaguro's petition for leave to appeal (134 Ill. 2d R. 315(a)), and now reverse.

### DISCUSSION

Before reaching the merits, we must address at the outset a preliminary matter.

### Mootness

We note, as did the appellate court, the obvious fact that the November 1992 election has already occurred and also that Bonaguro won. However, we agree with the appellate court that this cause is not moot.

One exception to the mootness doctrine allows a court to resolve an otherwise moot issue if the issue involves a substantial public interest. The criteria for application of the public interest exception are: (1) the public nature of the question, (2) the desirability of an authoritative determination for the purpose of guiding public officers, and (3) the likelihood that the question will recur. (*In re A Minor* (1989), 127 Ill. 2d 247, 257; *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 622.) A clear showing of each criterion is required to bring a case within the public interest exception. See *Kohan v. Rimland School for Autistic Children* (1981), 102 Ill. App. 3d 524, 527.

The present case meets this test. Of course, issues regarding the filling of judicial vacancies in nomination are of substantial public interest. Also, the appellate

court correctly observed that issues regarding this subject are long-standing and have not been addressed by courts or the legislature (240 Ill. App. 3d at 371). (See *Thurston v. State Board of Elections* (1979), 76 Ill. 2d 385, 387-88; Administrative Office of the Illinois Courts, 1981 Annual Report to the Supreme Court of Illinois 22.) An authoritative guide for future controversies is needed; the issue will likely recur. We will address the merits of this cause.

## Election Code

Bonaguro initially contends that Election Code section 7—61 does not authorize a political party to fill a judicial vacancy in nomination by party resolution. Bonaguro reasons that if we hold that section 7—61 does not authorize such a procedure, then we need not decide whether that section violates the Illinois Constitution. We take this path. A court will consider a constitutional question only where essential to the disposition of a case, *i.e.*, where the case cannot be determined on other grounds. (*In re Application of Rosewell* (1983), 97 Ill. 2d 434, 440; *Osborn v. Village of River Forest* (1961), 21 Ill. 2d 246, 249-50.) Accordingly, we first consider whether section 7—61 authorizes a political party to fill a judicial vacancy in nomination by party resolution. See *Winston v. Zoning Board of Appeals* (1950), 407 Ill. 588, 592.

Election Code section 7—61 provides in pertinent part that vacancies in nomination "shall be filled by the managing committee *** of the respective political party for the territorial area in which such vacancy occurs." Such a vacancy occurs when a nominee dies, declines the nomination, or for other reasons. (10 ILCS 5/7—61 (West 1992).) Sections 7—7 and 7—8 describe the appropriate managing committees. (10 ILCS 5/7—7, 7—8 (West 1992).) Section 7—7 authorizes these committees to make nominations. Bonaguro argues that section

7—61 applies to all vacancies in nomination *except* judicial vacancies.

We agree. The controlling principles are familiar. The primary rule of statutory interpretation, to which all other rules are subordinate, is that a court should ascertain and give effect to the intent of the legislature. The legislative intent should be sought primarily from the language used in the statute. Also, the statute should be evaluated as a whole; each provision should be construed in connection with every other section. *Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 91; *Totten v. State Board of Elections* (1980), 79 Ill. 2d 288, 291-92.

Additionally, a court presumes that the legislature intended to enact a constitutional statute. Accordingly, a court will construe a statute as constitutional, if it is reasonable to do so. (*Gill v. Miner* (1983), 94 Ill. 2d 52, 56.) If a statute's construction is doubtful, a court will resolve the doubt in favor of the statute's validity. *McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 103 (and cases cited therein).

Applying these principles to the present case, we conclude that the Election Code does not authorize a political party to fill a judicial vacancy in nomination by party resolution. Sections 7—7 and 7—61 describe only political districts for legislative and executive positions and do not refer to judicial committees for judicial vacancies in nomination.

True, sections 7—8(f) and (g) respectively establish a judicial district and a circuit court committee. (10 ILCS 5/7—8(f), (g) (West 1992).) Statutes should be construed, if possible, so that no term is rendered superfluous or meaningless. (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 365.) However, section 7—7 does not authorize these committees to make nominations. If it did, the constitutionality of article 7 would be called into question. (See

Administrative Office of the Illinois Courts, 1981 Annual Report to the Supreme Court of Illinois 22.) We must presume that the legislature did not intend to exceed its constitutional limitations. (*Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 156; *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 277.) The absence of a reference to a nominating committee for judicial office in section 7—7 indicates the legislative intent that judicial vacancies in nomination not be filled by party resolution as prescribed by article 7 of the Election Code.

We note two sources which accord with our interpretation of article 7 of the Election Code. We first refer to an administrative regulation of the Board of Elections. This State agency is empowered to administer the election laws and certify candidates. (Ill. Const. 1970, art. III, § 5; 10 ILCS 5/1A—1 (West 1992).) The Board of Elections has ruled that "[w]here an established political party and/or the members thereof fail to nominate a candidate for any office provided for in Article 7 of 'The Election Code,' this vacancy in nomination may be filled by the proper party committee of the political party, *except candidates for Judicial office.*" (Emphasis added.) 26 Ill. Adm. Code § 207.10 (1992).

Of course, a court is not bound by an administrative agency's interpretation of a statute. However, a court will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. Such an interpretation expresses an informed source for ascertaining the legislative intent. A significant reason for this deference is that an agency can make informed judgments upon the issues, based on its experience and expertise. (*Abrahamson*, 153 Ill. 2d at 97-98.) We agree with the Board of Elections' interpretation of article 7 of the Election Code.

The second source which accords with our interpre-

tation of article 7 of the Election Code is an opinion letter of the Illinois Attorney General. The Attorney General was of the opinion that Election Code section 7—61 could not be used to fill judicial vacancies in nomination. (1972 Ill. Att'y Gen. Op. 96, 97.) The Attorney General observed that the Framers intended to prohibit judicial nomination by party convention. He then reasoned that filling a judicial vacancy in nomination by party committee was "comparable to nomination by convention, and also prohibited." The Attorney General also observed that section 12(a) authorizes nomination by primary election or petition. He then reasoned that the word "election" means a popular vote, not a party committee. Therefore, he concluded that there is no method available to fill judicial vacancies in nomination. 1972 Ill. Att'y Gen. Op. 99.

Although not binding on the courts, a well-reasoned opinion of the Attorney General is entitled to considerable weight, especially in a matter of first impression in Illinois. (*City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 130-31.) We agree with the Attorney General's reasoning and conclusions on this issue.

Our disposition of this cause obviates the need to determine the constitutionality of article 7 of the Election Code. A court will not consider the constitutionality of a statute if the case can be disposed of without determining that question. *City of Aurora ex rel. Egan v. Young Men's Christian Association* (1956), 9 Ill. 2d 286, 290-91; *Father Basil's Lodge, Inc. v. City of Chicago* (1946), 393 Ill. 246, 261.

For the foregoing reasons, the judgments of the appellate and circuit courts are reversed.

*Judgments reversed.*

JUSTICE HEIPLE, concurring in the judgment:

I agree with the majority that this cause is appropriately addressed under the public interest exception to

the mootness doctrine. I further agree that, if there were a vacancy in nomination as contemplated by section 7—61 of the Election Code (10 ILCS 5/7—61 (West 1992)), that section would still not authorize the nomination attempted by the Democrats in this case. I join these parts of the court's opinion.

However, I believe the majority errs in its determination that there was a vacancy in nomination under section 7—61. Further, for the sake of judicial economy I believe the court should address the constitutional issues that were raised in this case. Thus, while I join in the judgment of the court, I cannot join fully in its opinion.

## ELECTION CODE

### Judicial Vacancy

The Democrats purported to nominate Arthur Janura as the Democratic candidate in the March 1992 primary election for circuit judge for the 13th judicial subcircuit, judgeship B, Cook County, pursuant to section 7—61 of the Election Code (10 ILCS 5/7—61 (West 1992)). That section allows parties to fill vacancies in nominations under certain circumstances.

The majority begins its analysis by looking to whether section 7—61 authorizes a political party to fill a judicial vacancy in nomination by party resolution. However, before turning to this issue, the court should first determine whether there was actually a vacancy in nomination. An examination of section 7—61 demonstrates that there was not.

Section 7—61 provides:

"A vacancy in nomination occurs when a candidate who has been nominated under the provisions of this Article 7 dies before the election (whether death occurs prior to, on or after the day of the primary), or declines the nomination; provided that nominations may become vacant for other reasons." 10 ILCS 5/7—61 (West 1992).

Since there was no death or resignation of a nominee, Janura could only fill a vacancy if the nomination "became vacant for other reasons" within the meaning of the statute.

This court has not yet been called upon to construe the scope of the phrase "become vacant for other reasons." Such a challenge has not been made since 1948, in *Progressive Party v. Flynn* (1948), 401 Ill. 573.

In *Flynn,* the court was presented with a version of section 7—61 which provided that " '[i]n case a candidate who has been nominated under the provisions of this Article 7 shall die before election, (whether death occurs prior to, or on or after the date of the primary) or decline the nomination, or should the nomination for *any* other reason become vacant,' " another candidate could be nominated. (Emphasis added.) (*Flynn,* 401 Ill. at 581, quoting Ill. Rev. Stat. 1947, ch. 46, par. 7—61.) This court ruled that section 7—61 meant what it said, and that "the legislature intended to provide for the filling of a vacancy in any office caused by death or declination of the nominee and also for the filling of the nomination if for any reason it should become vacant." *Flynn,* 401 Ill. at 582.

Since *Flynn,* the legislature has amended 7—61 so that the word "any" has been deleted. Now, "nominations may become vacant for other reasons." Thus, the issue turns on what the term "other reasons" includes.

"Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." 2A N. Singer, Sutherland on Statutory Construction § 47.17 (5th ed. 1992).

Applying this principle here, it is evident that when the legislature provided that "nominations may become vacant for other reasons," it intended to embrace only

reasons similar to death and resignation. Thus, a "vacancy in nomination" would occur only in circumstances beyond the political party's control.

Refusal to field a candidate in the primary election did not create a "vacancy in nomination" within the meaning of the statute. Rather, we are presented with a clear case of conscious choice, default or waiver by the Democrats. Since section 7—61's vacancy prerequisite was not met, the lower courts erred in concluding that it was a proper means of nominating Janura.

### Constitutional Considerations

The court's conclusion that the General Assembly did not provide a means for Janura's nomination is buttressed by the fact that such a provision would be unconstitutional.

The nomination of judicial candidates is controlled by article VI, section 12(a), of the Illinois Constitution (Ill. Const. 1970, art. VI, § 12(a)). That section provides, in pertinent part, that "Supreme, Appellate and Circuit Judges shall be nominated at primary elections or by petition." The constitution affords no other method or procedure for judicial nomination.

"The rule has become well established that where the office of judge is a constitutional one the General Assembly has no power to prescribe the manner of selection or election of the judge unless authorized by article VI." (*People ex rel. Nachman v. Carpentier* (1964), 30 Ill. 2d 475, 477.) Also, constitutional language must be given its plain meaning. (*Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 464.) The constitutional provision at issue is clear. Section 12(a) prescribes that judicial candidates must be nominated by primary election or by petition. It does not contain any provision for nomination by political party resolution to fill a judicial vacancy in nomination.

For the foregoing reasons, I concur in the judgment.

CHIEF JUSTICE BILANDIC and JUSTICE NICK-
ELS join in this concurrence.