WILLIAM R. AYERS, a/k/a Will Ayers, Plaintiff-Appellant, v. DAVID B. MARTIN *et al.*, Indiv. and as Members of the Educational Officers Electoral Board of Bement Community Unit School District No. 5, *et al.*, Defendants-Appellees.

Fourth District   No. 4—91—0733

Opinion filed December 30, 1991.

James L. Ayers, of Monticello, for appellant.

Merry C. Rhoades, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Carbondale, for appellees.

JUSTICE LUND delivered the opinion of the court:

The Board of Education (School Board) of Bement Community School District No. 5 adopted a resolution which would have authorized the issuance of working cash bonds in the amount of $515,000. (See Ill. Rev. Stat. 1989, ch. 122, pars. 20—1 through 20—9.) Plaintiff William R. Ayers filed petitions seeking to require a public referendum on the question of issuance of the bonds. The School Board directed the filing of challenges to the petitions. A hearing on these challenges was held before an electoral board which consisted of three members of the School Board. (See Ill. Rev. Stat. 1989, ch. 46, par. 10—9(5).) Sufficient objections were sustained to prevent placing the working cash bond issue on the ballot. Pursuant to section 10—10.1 of the Election Code (Code) (Ill. Rev. Stat. 1989, ch. 46, par. 10—10.1), plaintiff sought administrative review in the circuit court of Piatt County. That court upheld the electoral board. Plaintiff appeals. We affirm.

Plaintiff's only contention on appeal is denial of a fair and impartial hearing before the electoral board because of an alleged conflict of interest. The electoral board consisted entirely of members of the School Board which was seeking issuance of the working cash bonds. Two members of the electoral board had voted as School Board members to authorize challenges to the petitions. Plaintiff does not claim error in the court's affirmance of the electoral board's decision sustaining sufficient challenges to void the petitions. However, we point out that the challenges stated the petitions (1) were signed by nonregistered voters, (2) contained three forged signatures, (3) were missing addresses, (4) were improperly executed by circulators, (5) had circulators witnessing their own signatures, (6) contained illegible signatures, and (7) were improperly bound and lacked consecutive

numbers. We emphasize that most objections dealt with questions of law.

Basically, plaintiff bases his claim on lack of due process. The court decision in *In re Objection of Cook to Referendum Petition of Pierce* (1984), 122 Ill. App. 3d 1068, 462 N.E.2d 557, determined that venue should not be changed from a duly constituted electoral board when the statute designated the composition of the board and did not provide for a procedure for changing venue. In *Cook*, the circuit court, sitting in administrative review, considered the nature of the challenges to the board members and found the board's decision to be correct.

Even more on point is *Ryan v. Landek* (1987), 159 Ill. App. 3d 10, 512 N.E.2d 1. In *Ryan*, a newly formed political party filed nominating petitions for political offices in the Village of Bridgeview. Two of the officers of the party were members of the electoral board. They had also circulated the party's petitions. Plaintiff filed objections to the petitions, which were heard by the electoral board. Plaintiff moved for the recusal of the two party officers at the outset of the hearing because of their potential bias and interest in the proceedings. The board overruled the motion and then rejected plaintiff's objections to the nominating petitions. The circuit court affirmed the board's decision.

On appeal, plaintiff contended the board did not afford him a fair, impartial, and unbiased hearing. The court found no merit in plaintiff's claims. It found the case analogous to *Cook*. The court said that even if it agreed with plaintiff that he could not receive a fair hearing because of political bias, the Code does not provide for substitution when an objector alleges political bias. The statute specifies the instances in which a substitution must be made, and the court declined to rewrite the statute. These protections, together with the remedy of administrative review, adequately ensure an objector a fair hearing. *Ryan*, 159 Ill. App. 3d at 12-13, 512 N.E.2d at 2-3.

Plaintiff seeks to distinguish these cases. He points out that *Cook* and *Ryan* dealt with allegations of political bias as a disqualification to serve on the electoral board. In the instant case, plaintiff notes that two of the electoral board members had voted as members of the School Board to authorize the preparation of the objections to his petitions that they, as members of the electoral board, would review. He also claims the School Board has a pecuniary interest in the outcome, which was not present in *Cook* and *Ryan*. However, this argument is without merit. As defendants point out, none of the electoral board members have any personal financial interest in this matter.

400

In effect, plaintiff asks us to rewrite the statute and allow for recusal of electoral board members in this case. We decline this invitation, as did the courts in *Cook* and *Ryan*.

■■■ The due-process protection in cases of this type, where conflicts of interest appear present, is based upon circuit court administrative review. Here, the circuit court reviewed the petitions as to irregularities. The administrative review "hearing and determination shall extend to all questions of law and of fact presented by the entire record before the court." (Ill. Rev. Stat. 1989, ch. 110, par. 3—110.) While section 3—110 of the Code of Civil Procedure also provides "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct" (Ill. Rev. Stat. 1989, ch. 110, par. 3—110), we hold that where, as here, the issues are basically questions of law and the trial court has reviewed them *de novo*, due process is provided.

Regardless of our decision, we recognize the appearance of impropriety where the advocates of a position end up ruling on procedures involving the adoption or defeat of the position. The General Assembly might find it advisable to adopt corrective legislation.

Affirmed.

GREEN, P.J., and COOK, J., concur.