(No. 96963.

RICHARD GIROT, Appellant, v. KENNETH KEITH, Objector (Municipal Officers Electoral Board of the City of Braidwood *et al.*, Appellees).

*Opinion filed October 21, 2004.*

374

Gary Scott Pyles and Joseph M. Cernugel, of Krockey, Cernugel, Cowgill, Clark & Pyles, Ltd., of Joliet, for appellant.

Vincent Cainkar, of Louis F. Cainkar, Ltd., of Burbank, for appellee board members.

Burton S. Odelson and Tiffany A. Nelson, of Odelson & Sterk, Ltd., of Evergreen Park, for appellee objector.

Michael J. Sturino, of Storino, Ramello & Durkin, of Rosemont, for *amici curiae* Independent Voters of Illinois *et al.*

JUSTICE RARICK delivered the opinion of the court:

The issues in this case are whether due process was violated when the petitioner-appellant, Richard Girot, was denied the right to be listed as a candidate for mayor on the ballot in the February 25, 2003, primary election in the City of Braidwood (Braidwood) and, if so, whether such violation can be considered harmless error. Following Girot's filing of his statement of candidacy and nominating petitions for mayor of Braidwood, Kenneth

Keith filed several objections alleging Girot's failure to comply with certain requirements of Illinois' Election Code (Code) (10 ILCS 5/1—1 *et seq.* (West 2002)). The Municipal Officers Electoral Board of the City of Braidwood (Electoral Board or Board) scheduled a hearing on these objections. Girot moved to have the city clerk, Sue Grygiel, replaced on the Board due to her alleged bias, but this motion was denied. Following the hearing, the Board sustained Keith's objections and held that Girot's name would not be placed on the ballot. Girot sought judicial review, and the circuit court of Will County affirmed the Electoral Board's decision. Girot appealed and the appellate court found that Girot's due process rights had been violated, but affirmed the circuit court, finding the error to be harmless. 341 Ill. App. 3d 902. We granted Girot's petition for leave to appeal. 177 Ill. 2d R. 315(a). Pursuant to Supreme Court Rule 345 (155 Ill. 2d R. 345), we have permitted the Independent Voters of Illinois, *et al.*, to file an *amicus curiae* brief in support of Girot.

Our examination of the record in the case at bar shows that on December 9, 2002, Girot filed, *inter alia*, a statement of candidacy and petitions with city clerk Grygiel, seeking Girot's placement on the ballot for a mayoral election in Braidwood. Two weeks after Girot submitted his documents, Keith filed objections asserting that, *inter alia*, Girot failed to properly bind his petition sheets and statement of candidacy, in violation of sections 7—10 and 10—4 of the Code (10 ILCS 5/7—10, 10—4 (West 2002)). As city clerk of Braidwood, Grygiel normally sat on the Board to hear and decide objections to election petitions. See 10 ILCS 5/10—9(3) (West 2002). However, when it became apparent that Grygiel was to participate in the hearing on Keith's objections as both a witness and a member of the Board, Girot moved for Grygiel to be replaced.

At the hearing on Girot's motion, he asked to have a member of the Electoral Board notify the chief judge of the circuit court to appoint Grygiel's replacement. See 10 ILCS 5/10—9(6)(d) (West 2002). Girot argued that because Grygiel, as city clerk, had personally received his petitions and would be testifying regarding whether they had been bound, Grygiel's position on the Electoral Board would violate Girot's fourteenth amendment right to due process. The Board, after discussing the matter in executive session, voted to deny Girot's motion for substitution.

At the hearing on Keith's objections, the following testimony, *inter alia*, was adduced. Grygiel testified on behalf of the objector that she had personally received Girot's nominating papers. She further stated that when she received those documents, they were loose and not stapled, bound, or clipped in any way. Grygiel testified that she put Girot's documents in a paper clip. Following the denial of his motion for a directed verdict, Girot testified that his nominating documents were paper-clipped together when he filed them with Grygiel. He further testified that Grygiel separated them and looked through them, "which it appeared to me at that time that she stapled them." On cross-examination, Girot admitted that while it seemed that Grygiel had stapled his papers, there were no staple marks on the documents, which he believed could mean that Grygiel "stapled something else." Girot then called Grygiel, who testified that when she accepted his documents, she put them in a paper clip. She did not believe that they were paper-clipped when Girot gave them to her. However, on redirect, Grygiel admitted that she "would honestly say I'm not a [*sic*] hundred percent [certain]" that the papers were not clipped together when she received them.

Following closing arguments, the Board, including Grygiel, went into executive session to deliberate. When

the hearing was again called to order, Electoral Board Chairperson Heberer moved to grant the objector's petition that the name of Richard Girot be struck from the ballot for the election. The motion was granted by a vote of 2 to 1, with Grygiel being the deciding vote. The Board noted that it found Grygiel's testimony credible, but also stated that it would find that, even if Girot had paperclipped the nominating petitions together, he had not complied with the Code. The Board also held that Keith's other objections were substantiated by failures in Girot's documents, which independently supported its decision.

Initially, we note that, under the Code, as well as under notions of procedural due process, it was clearly error for the Electoral Board to deny Girot's motion to substitute Grygiel. The Board's written decision states that it "denies Girot's Motion for Substitution seeking the removal of City Clerk, Sue Grygiel, from the Board. There is no statutory provision authorizing Ms. Grygiel's removal. Moreover, judicial review, if pursued, will ensure that Girot received a fair hearing before the Board. *See* [*In re*] *Objection of Cook* [*to Referendum Petition of Pierce*], 122 Ill. App. 3d 1068, 462 N.E.2d 557, 560 (1984)." However, in *Kaemmerer v. St. Clair County Electoral Board*, 333 Ill. App. 3d 956, 959 (2002), the Fifth District of the Appellate Court held, contrary to its prior holding in *In re Objection of Cook*: "The Code provides a means to substitute a statutorily designated person to replace an 'interested' board member. *** [S]ection 10—9(6) establishes a process for the substitution of a member of the Electoral Board in the event of a conflict." *Kaemmerer*, 333 Ill. App. 3d at 959-60.

Indeed, subsection (d) of section 10—9(6) states, *inter alia*: "Any vacancies on an electoral board not otherwise filled pursuant to this Section shall be filled by public members appointed by the Chief Judge of the Circuit Court for the county wherein the electoral board hearing

is being held upon notification to the Chief Judge of such vacancies." 10 ILCS 5/10—9(6)(d) (West 2002). Thus, contrary to the Board's decision, we agree with *Kaemmerer*, 333 Ill. App. 3d at 960, that section 10—9(6) of the Code covers the instant situation, allowing for a substitution of a board member "in the event of a conflict." See also *Anderson v. McHenry Township*, 289 Ill. App. 3d 830, 833-34 (1997) (appellate court reversed the judgment of the circuit court and remanded for a new hearing *de novo* before an electoral board composed of impartial replacements appointed by the chief judge of the circuit court pursuant to section 10—9(6) of the Code).

The Board also erred in denying Girot's motion to substitute based on its finding that judicial review would *"ensure* that Girot received a fair hearing before the Board." (Emphasis added.) This reasoning, apparently originating in *In re Objection of Cook*, has since been used by several Illinois courts to reject claims of procedural due process violations where an objector or candidate argued he could not receive a fair hearing before an electoral board. See *Ryan v. Landek*, 159 Ill. App. 3d 10, 13 (1987) (judicial review in the circuit court under section 10—10.1 of the Code, *inter alia*, precludes finding an implied right to substitute board members " 'whenever an objector feels a conflict is present' "), quoting *In re Objection of Cook*, 122 Ill. App. 3d at 1072); see also *Ayers v. Martin*, 223 Ill. App. 3d 397, 399 (1991) (statutory protections, together with the remedy of judicial review, adequately ensure a fair hearing).

In the instant case, however, the circuit court, on judicial review, affirmed the Electoral Board's ruling, holding that its decision "on the issue of binding" was not against the manifest weight of the evidence. While it is true that judicial review of electoral board questions of fact will be disturbed only if they are against the manifest

weight of the evidence, the review of a question of law is independent and not deferential. See *Reyes v. Bloomingdale Township Electoral Board*, 265 Ill. App. 3d 69, 72 (1994). As this court recently stated:

> "An administrative agency's findings of fact are not reversed unless they are against the manifest weight of the evidence, and questions of law are reviewed *de novo*. [Citation.] We review the issue of whether [plaintiff's] procedural due process rights were violated under the *de novo* standard because it is a legal question. [Citation.]" *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 271 (2004).

Therefore, here, where the preliminary question raised on judicial review was one of law, the circuit court's error in using a standard of review other than *de novo* once again deprived Girot of a fair hearing. See *Comito v. Police Board of the City of Chicago*, 317 Ill. App. 3d 677, 686 (2000) (on judicial review, the manifest weight of the evidence standard is not controlling where the board is prejudiced or biased against the claimant and incapable of giving him a fair hearing); *County of Lake v. Pollution Control Board*, 120 Ill. App. 3d 89, 98 (1983) (where Pollution Control Board, on administrative review of county board's decision, incorrectly applied the wrong standard of review, its finding was invalid).

On appeal, the appellate court did not address this standard of review error by the circuit court, but agreed with Girot that his due process rights were adversely affected by Grygiel's simultaneous status as witness and fact finder. The appellate court relied on the "well-settled principle of law that due process requires that a party appearing before an administrative tribunal be judged by an unbiased decisionmaker. [Citation.]" 341 Ill. App. 3d at 903. As the appellate court further stated:

> "[Girot] was placed in the unenviable position of presenting testimony contradictory to that of a witness who would then retire with the other two Board members to determine the credibility of the witnesses. Suggesting that Grygiel

was unbiased, when she was required to weigh her own credibility against another witness's, stretches our credulity." 341 Ill. App. 3d at 903-04.

We concur with this reasoning, where it is indeed a well-settled principle of law that concepts of due process apply to administrative hearings, and the parties are guaranteed the right to a fair and impartial tribunal. See *Anderson*, 289 Ill. App. 3d at 832; *Sindermann v. Civil Service Comm'n*, 275 Ill. App. 3d 917, 923 (1995); see also *Collura v. Board of Police Commissioners*, 113 Ill. 2d 361, 369 (1986).

However, the appellate court went on to hold that while the Electoral Board erred in failing to grant Girot's motion for substitution: "Because Girot claims that Grygiel's dual role at the hearing violated [Girot's] fourteenth amendment due process rights, we further assess the error under the harmless error standard. See *People v. Jefferson*, 227 Ill. App. 3d 491, 496 (1992). If the error did not affect the outcome of the hearing, then it is not reversible error. See *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967)." 341 Ill. App. 3d at 904. It is here that we must part company with the appellate court's opinion.

Contrary to the appellate court, we believe that a due process violation of this nature can never be found harmless. We find the Third District's reasoning in *Huff v. Rock Island County Sheriff's Merit Comm'n*, 294 Ill. App. 3d 477 (1998), to be particularly cogent:

"A fundamental principle of due process, applicable to administrative agencies and commissions, is that no person who has a personal interest in the subject matter of a suit may sit in judgment on that case. *In re Heirich*, 10 Ill. 2d 357, 140 N.E.2d 825 (1956). A personal interest or bias can be pecuniary *or any other interest that may have an effect on the impartiality of the decisionmaker. City of Naperville v. Wehrle*, 340 Ill. 579, 173 N.E. 165 (1930). To prove bias, the plaintiff must overcome a presumption of honesty by showing in the record that the administrative proceedings

were either tainted by dishonesty *or contained an unacceptable risk of bias. Caliendo v. Martin,* 250 Ill. App. 3d 409, 620 N.E.2d 1318 (1993)." (Emphases added.) *Huff,* 294 Ill. App. 3d at 481.

In this case, Girot has shown, via the record, that he was biased by the due process violation of an electoral board determination in which one of the decisionmakers ultimately adjudicated contested issues of fact regarding her own credibility. We find that such a process flagrantly violates due process notions of fairness and impartiality. Put simply, there is an inevitable bias when a fact finder is evaluating her own credibility. As the United States Supreme Court stated in *In re Murchison,* 349 U.S. 133, 136, 99 L. Ed. 942, 946, 75 S. Ct. 623, 625 (1955): "[O]ur system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome."

Further, we find this case distinguishable from those cases where an administrative decisionmaker is merely familiar with the facts of a matter. See *Hortonville Joint School District No. 1 v. Hortonville Education Ass'n,* 426 U.S. 482, 493, 49 L. Ed. 2d 1, 9, 96 S. Ct. 2308, 2314 (1976) (mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not disqualify a decisionmaker). Here, Grygiel cast the deciding vote to strike Girot's name from the ballot, and the Electoral Board adopted findings of fact and conclusions of law regarding her own credibility. Thus, where a fair hearing before an administrative agency must include, *inter alia,* impartial rulings on the evidence (*Abrahamson v. Illinois Department of Professional Regulation,* 153 Ill. 2d 76, 95 (1992)), and Girot has shown that he was prejudiced because the proceeding "contained an unacceptable risk of bias" (*Huff,* 294 Ill. App. 3d at 481), we find the appellate court erred in holding this due process violation to be harmless.

Contrary to the appellate court's belief, *Jefferson* and *Chapman* do not require a harmless error analysis to be applied in every case where a fourteenth amendment right to due process is violated. *Jefferson*, 227 Ill. App. 3d at 496, merely states that when a certain type of federal due process violation has occurred, *e.g.*, the giving of an improper instruction, the reviewing court must assess the error under the harmless error standard enunciated in *Chapman*. Indeed, *Chapman* does hold: "[T]here may be *some* constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless ***." (Emphasis added.) *Chapman*, 386 U.S. at 22, 17 L. Ed. 2d at 709, 87 S. Ct. at 827. However, *Chapman* endorses a procedure which "emphasizes an intention not to treat as harmless those constitutional errors that 'affect substantial rights' of a party." *Chapman*, 386 U.S. at 23, 17 L. Ed. 2d at 710, 87 S. Ct. at 828. Finally, *Chapman* makes clear "that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," and cites, as an example, *Tumey v. Ohio*, 273 U.S. 510, 71 L. Ed. 749, 47 S. Ct. 437 (1927), which involved the lack of impartiality of a judge. *Chapman*, 386 U.S. at 23 & n.8, 17 L. Ed. 2d at 710 & n.8, 87 S. Ct. at 827-28 & n.8; see also *Arizona v. Fulminante*, 499 U.S. 279, 309, 113 L. Ed. 2d 302, 331, 111 S. Ct. 1246, 1265 (1991) (the bias of the judge is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by 'harmless-error' standards").

As a final matter, Keith and the Board argue that because Braidwood's February 25, 2003, primary and April 1, 2003, mayoral election have come and gone, this court should declare Girot's appeal to be moot. However, the questions that we have addressed here clearly fall within the public interest exception to the mootness

doctrine. The criteria for the application of the public interest exception are: (1) the public nature of the question; (2) the desirability of an authoritative determination for the purpose of guiding public officers; and (3) the likelihood that the question will recur. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 395 (1994). It is true that Braidwood's mayoral election is long since over and Girot, as appellant, can receive no actual relief, *i.e.*, a timely hearing before an unbiased decisionmaker. Nevertheless, we feel that each of the criteria for the application of the exception has been met, and that it is of substantial public interest to establish that a clear due process violation, not susceptible to harmless-error analysis, occurs where a member of an election board acts as both a witness and an adjudicator.

Given this holding, we need not address whether Girot's filings contained Code violations, including whether a paper clip constitutes "fastening [the documents] together at one edge in a secure and suitable manner," under sections 7—10 and 10—4. A determination of the legitimacy of Keith's objections would serve no purpose under the circumstances presented here. As the United States Supreme Court stated so concisely some 77 years ago: "No matter what the evidence was against [defendant], he had the right to have an impartial judge." *Tumey*, 273 U.S. at 535, 71 L. Ed. at 759, 47 S. Ct. at 445. Thus, in sum, because Girot seasonably raised an objection to Grygiel's participation on the Electoral Board, he was entitled to halt the hearing and request that the chief judge appoint a substitute for Grygiel, where she presented an "unacceptable risk of bias." *Huff*, 294 Ill. App. 3d at 481; see also *Tumey*, 273 U.S. at 535, 71 L. Ed. at 759, 47 S. Ct. at 445; 10 ILCS 5/10—9(6)(d) (West 2002). As this procedure was not followed, a due process violation occurred which requires reversal of the Electoral Board's decision.

Therefore, and for the foregoing reasons, the judgments of the circuit and appellate courts affirming the Board's decision are reversed.

*Reversed.*

JUSTICE KILBRIDE, dissenting:

The majority asserts that a violation of the due process right to a hearing before an unbiased decision-maker can never be deemed harmless error. 212 Ill. 2d at 380. I disagree because the majority should not have addressed the constitutional issue and, further, because the majority's pronouncements on the questions addressed are, in my view, erroneous. Therefore, I respectfully dissent.

First, it is a well-established rule that this court will not address a constitutional issue when the case can be decided on other grounds. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 396 (1994). This appeal clearly could have been, and should have been, decided on other grounds. Furthermore, the majority asserts, without analysis, that each of the criteria for application of the public interest exception to the mootness doctrine has been met. 212 Ill. 2d at 382-83. I see nothing in the record to justify the conclusion that any of the criteria have been met. Accordingly, I would dismiss the appeal as moot.

Second, the issue in this case concerns whether Girot failed to comply, as a matter of law, with the secure-binding requirement of the Election Code (10 ILCS 5/10—4 (West 2002)). Where, as here, the issue is a question of law concerning only compliance with the Election Code, due process is satisfied. See, *e.g.*, *Ayers v. Martin*, 223 Ill. App. 3d 397, 400 (1991) (holding that where "the issues are basically questions of law and the trial court has reviewed them *de novo*, due process is provided"). Consequently, even if this case meets the public interest exception to the mootness doctrine, the majority should

uphold the Electoral Board's decision on the basis that Gerot failed to comply with the Election Code.

Third, the alleged bias in this case did not violate Girot's due process rights. The alleged bias of Grygiel is that, in her capacity as a fact finder, she was required to assess the credibility of Girot, who testified contrary to her own testimony. According to the majority, because Grygiel testified regarding the filing of the nominating petitions in question, she was required to assess her own credibility and Girot's credibility. If the case turned on the credibility of witnesses, a risk of bias could be present that may violate Girot's due process rights. This case, however, was not decided adversely to Girot because of conflicting testimony. Instead, the Electoral Board's decision was based on its determination that Girot failed to comply, as a matter of law, with the secure-binding requirement of the Election Code.

In its recitation of the facts, the majority notes that Girot admitted that the nominating petitions were secured only by a paper clip when he tendered them to Grygiel. He further conceded, on cross-examination, that no staple marks appeared on the documents and that Grygiel could have stapled something else. Grygiel denied stapling the documents, but admitted that she was not certain whether they were attached by a paper clip when delivered to her, or whether she affixed the paper clip. Thus, there was no material difference in the testimony of the witnesses on this dispositive point. Both agreed that the documents were attached by paper clip and not stapled or otherwise secured in a suitable manner.

Accordingly, the Electoral Board was not required to assess witness credibility in determining that attaching documents by paper clip was not compliant with the Election Code requirement that the documents be fastened together in a secure and suitable manner. The Electoral Board expressly found that "affixing the petition sheets

and Statement of Candidacy by a paper clip does not comply with the mandate of being 'bound' as required by Section 10—4." Therefore, I would hold that Grygiel's dual capacity as witness and fact finder did not affect the outcome of the hearing and, under these circumstances, did not violate Girot's due process rights. Even if due process was implicated, I would hold that any violation in this case was "so unimportant and insignificant that [it] may, consistent with the Federal Constitution, be deemed harmless." *Chapman v. California*, 386 U.S. 18, 22, 17 L. Ed. 2d 705, 709, 87 S. Ct. 824, 827 (1967).

Moreover, the majority's reliance on *Huff v. Rock Island County Sheriff's Merit Comm'n*, 294 Ill. App. 3d 477 (1998), is misplaced. That case correctly held that, "[t]o prove bias, the plaintiff must overcome a presumption of honesty by showing in the record that the administrative proceedings were either tainted by dishonesty or contained an unacceptable risk of bias." *Huff*, 294 Ill. App. 3d at 481. The *Huff* court determined, however, that no taint or risk was demonstrated, despite the fact that one of the commissioners had served as the sheriff's political campaign chairman and that another commissioner may have made a disparaging remark about the plaintiff at an earlier disciplinary hearing.

In the case before us, the only possible risk of bias demonstrated by the record is a credibility assessment by Grygiel. The majority asserts that she adjudicated contested issues of fact regarding her own credibility. 212 Ill. 2d at 381. As noted earlier, there was no contested issue of fact regarding the means used to secure the petitions. The Electoral Board was simply not required to assess credibility in determining whether using a paper clip satisfied Election Code requirements.

Furthermore, "[n]ot all allegations of bias *** rise to the level of a due process violation" (*Ryan v. Landek*, 159 Ill. App. 3d 10, 12 (1987)) and simply being a witness

to this transaction as a result of a statutory duty is insufficient to establish bias. I am aware of no authority requiring a disqualification of an electoral board member whenever a party alleges bias. In fact, " '[t]he case law, both federal and state, generally rejects the idea that the combination [of] judging [and] investigating functions is a denial of due process ... .' " *Withrow v. Larkin*, 421 U.S. 35, 52, 43 L. Ed. 2d 712, 726, 95 S. Ct. 1456, 1467 (1975), quoting 2 K. Davis, Administrative Law Treatise § 13.02, at 175 (1958). Therefore, I am persuaded that, under the specific facts of this case, the error was harmless.

Additionally, the majority holds that under the Election Code, as well as due process considerations, it was error for the Electoral Board to deny Girot's motion to substitute Grygiel, because section 10—9(6) of the Election Code allows the substitution of an Electoral Board member in the event of a conflict. 212 Ill. 2d at 377. This conclusion is based on the majority's reliance on the holding in *Kaemmerer v. St. Clair County Electoral Board*, 333 Ill. App. 3d 956 (2002). *Kaemmerer* is clearly distinguishable on its facts.

*Kaemmerer* involved the Election Code's provision for substitution of an Electoral Board member. Section 10—9(6) of the Election Code provides a method of filling a vacancy on the Electoral Board created by a single specific circumstance—a board member being a candidate for the office that is the subject of the objector's challenge. The statute provides, in pertinent part, as follows:

"In the event that any member of the appropriate board is a candidate for the office with relation to which the objector's petition is filed, he shall not be eligible to serve on that board ***." 10 ILCS 5/10—9(6) (West 2002).

In *Kaemmerer*, an objector filed challenges to a Republican slate of candidates, including the candidates for county clerk and county treasurer. The first challenge to be heard was that of the objector to the petitions of the candidate for county clerk. The Republican candidate

for that office objected to the Democratic county clerk, who was a candidate for reelection, serving as a member of the Electoral Board. The incumbent recused himself, and the incumbent Democratic county treasurer was substituted. The Republican candidate again objected, noting that the basis of the challenge to the county treasurer's opponent's candidacy was the same as the challenge to the county clerk's opponent's candidacy, and the treasurer would, in effect, be deciding the issues raised in the challenge to his opponent. The objection was denied, the hearing proceeded, and the challenge was unsuccessful. The circuit court affirmed and the appellate court reversed. The appellate court applied section 10—9(6) of the Election Code, holding that "each member of the Electoral Board whose opponent was being challenged should have recused himself," noting that the conflict the statute was intended to resolve remained, despite literal compliance, in the first instance, with the statutory language. *Kaemmerer*, 333 Ill. App. 3d at 960.

In the case at bar, the conflict created by Grygiel's dual capacity is neither directly nor indirectly addressed by section 10—9(6), because the express language of that statute only applies to vacancies caused by an office holder's disqualification in cases when the election opponent's petitions are the object of a challenge. The statute was clearly not designed to resolve conflicts of the kind presented in this case. The majority's application of the statute is a forced interpretation, not justified by the clear, unambiguous language of section 10—9(6). As we have often explained, legislative intent is determined primarily from the language used in the statute, and courts should not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with express legislative intent. *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 56 (1998); *Barnett v. Zion Park District*, 171 Ill. 2d 378, 389 (1996).

I believe the majority's application of section 10—9(6) violates this principle, by enlarging its scope beyond the specific conflict addressed by the legislature, and is thus erroneous. Therefore, I respectfully dissent.