NOTICE

Decision filed 08/19/10, corrected 09/16/10. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-10-0265

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| WHITNEY WISNASKY-BETTORF, | ) Appeal from the |
| | ) Circuit Court of |
| Petitioner-Appellant, | ) St. Clair County. |
| | ) |
| v. | ) No. 10-MR-123 |
| | ) |
| PEGGY PIERCE, Objector, ST. CLAIR | ) |
| COUNTY ELECTORAL BOARD, BOB | ) |
| DELANEY, Chairman, ROBERT HAIDA, | ) |
| Member, and CHARLES SUAREZ, Member, | ) Honorable |
| | ) Andrew J. Gleeson, |
| Respondents-Appellees. | ) Judge, presiding. |

_____

JUSTICE WEXSTTEN delivered the opinion of the court:

This case requires us to construe section 7-61 of the Illinois Election Code (the Code) (10 ILCS 5/7-61 (West Supp. 2009)). Specifically, we must determine whether an established political party must file a resolution pursuant to that section in order to fill a vacancy in nomination when no candidate appeared on the primary ballot for that party and no write-in candidate was nominated.

The petitioner, Whitney Wisnasky-Bettorf, was nominated by the Republican Party for the office of board of review member following the general primary elections where no Republican Party candidate's name was printed on the ballot and no candidate was nominated as a write-in for that office. An objection was made by Peggy Pierce (the objector) to the timeliness of the petitioner's candidacy. The St. Clair County Electoral Board (the board) sustained that objection and removed the petitioner's name from the ballot for the general election to be held on November 2, 2010, and the St. Clair County circuit court upheld the board's decision. The petitioner moved for and was granted an expedited appeal. On August

1

12, 2010, we entered an order affirming the circuit court in this matter and stated that our opinion would follow.

## BACKGROUND

On February 2, 2010, the three established political parties in Illinois–the Republican Party, the Green Party, and the Democratic Party–held general primary elections to determine candidates for the general election to be held on November 2, 2010. No candidate's name was printed on the Republican Party ballot in St. Clair County for the office of board of review member, and no candidate was nominated as a write-in for that office. Accordingly, on March 25, 2010, the St. Clair County central committee of the Republican Party (the committee) held a meeting at which it passed a motion designating the petitioner as the appointee for candidacy for the office of board of review member. On April 1, 2010, the committee filed a "resolution/certificate of appointment" with the county clerk of St. Clair County, indicating that the executive committee of the Republican Party in St. Clair County had voted to nominate the petitioner for the office of board of review member as required by section 7-61 or section 8-17 of the Code (10 ILCS 5/8-17 (West 2008)).

On April 26, 2010, the objector filed a verified objector's petition and a memorandum in support thereof, requesting that the petitioner's name not appear on the ballot for election to the office of board of review member because the resolution was not filed within three days as required by section 7-61. On April 30, 2010, the board convened to pass upon the objector's petition. On May 3, 2010, the board entered an order, dated April 30, 2010, allowing the objection and ordering the petitioner's name removed from the ballot for the general election to be held on November 2, 2010. The petitioner sought timely judicial review, and following a hearing, the circuit court affirmed the decision of the board. This timely appeal followed.

2

ANALYSIS

We begin by addressing the pending motions filed with this court. The objector filed a motion to strike and the petitioner filed a motion for sanctions. On July 21, 2010, we entered an order taking those motions with the case. We now deny both motions as moot, finding that all the facts necessary to our disposition are contained within the common law record that the objector concedes was properly filed. On July 22, 2010, the petitioner filed a motion to file affidavits as exhibits to petitioner's response to respondent's motion to strike. On July 23, 2010, the petitioner filed a motion for leave to file a reply to respondent's response to motion for sanctions, along with a reply to the objector's motion for sanctions. We now grant those motions.

We now turn to our review of the board's decision. Factual findings made by an electoral board will not be disturbed unless they are against the manifest weight of the evidence. *Girot v. Keith*, 212 Ill. 2d 372, 378-79 (2004). We are not bound, however, by the board's interpretation of a statute. *King v. Justice Party*, 284 Ill. App. 3d 886, 888 (1996). Statutory interpretation is a matter of law subject to *de novo* review. *Lockhart v. Cook County Officers Electoral Board*, 328 Ill. App. 3d 838, 841 (2002).

"The primary rule of statutory interpretation, to which all other rules are subordinate, is that a court should ascertain and give effect to the intent of the legislature." *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994). "The legislative intent should be sought primarily from the language used in the statute." *Bonaguro*, 158 Ill. 2d at 397. "Also, the statute should be evaluated as a whole; each provision should be construed in connection with every other section." *Bonaguro*, 158 Ill. 2d at 397. "Statutes should be construed, if possible, so that no term is rendered superfluous or meaningless." *Bonaguro*, 158 Ill. 2d at 397.

Section 7-61 of the Election Code was amended effective January 1, 2010. Prior to

3

January 1, 2010, section 7-61 provided as follows:

"Whenever a special election is necessary the provisions of this Article are applicable to the nomination of candidates to be voted for at such special election.

In cases where a primary election is required the officer or board or commission whose duty it is under the provisions of this Act relating to general elections to call an election[] shall fix a date for the primary for the nomination of candidates to be voted for at such special election. Notice of such primary shall be given at least 15 days prior to the maximum time provided for the filing of petitions for such a primary as provided in Section 7-12.

Any vacancy in nomination under the provisions of this [a]rticle 7 occurring on or after the primary and prior to certification of candidates by the certifying board or officer[] must be filled prior to the date of certification. Any vacancy in nomination occurring after certification but prior to 15 days before the general election shall be filled within 8 days after the event creating the vacancy. The resolution filling the vacancy shall be sent by U.S. mail or personal delivery to the certifying officer or board within 3 days of the action by which the vacancy was filled; provided, if such resolution is sent by mail and the U.S. postmark on the envelope containing such resolution is dated prior to the expiration of such 3[-]day limit, the resolution shall be deemed filed within such 3[-]day limit. Failure to so transmit the resolution within the time specified in this [s]ection shall authorize the certifying officer or board to certify the original candidate. Vacancies shall be filled by the officers of a local municipal or township political party as specified in subsection (h) of [s]ection 7-8, other than a statewide political party, that is established only within a municipality or township and the managing committee (or legislative committee in case of candidate for State Senator or representative committee in the case of a

4

candidate for State Representative in the General Assembly or State central committee in the case of a candidate for statewide office, including but not limited to the office of United States Senator) of the respective political party for the territorial area in which such vacancy occurs.

The resolution to fill a vacancy in nomination shall be duly acknowledged before an officer qualified to take acknowledgments of deeds and shall include, upon its face, the following information:

(a) the name of the original nominee and the office vacated;

(b) the date on which the vacancy occurred;

(c) the name and address of the nominee selected to fill the vacancy and the date of selection.

The resolution to fill a vacancy in nomination shall be accompanied by a Statement of Candidacy, as prescribed in [s]ection 7-10, completed by the selected nominee and a receipt indicating that such nominee has filed a statement of economic interests as required by the Illinois Governmental Ethics Act.

The provisions of [s]ection 10-8 through 10-10.1 relating to objections to certificates of nomination and nomination papers, hearings on objections, and judicial review[] shall apply to and govern objections to resolutions for filling a vacancy in nomination.

Any vacancy in nomination occurring 15 days or less before the consolidated election or the general election shall not be filled. In this event, the certification of the original candidate shall stand and his name shall appear on the official ballot to be voted at the general election.

A vacancy in nomination occurs when a candidate who has been nominated under the provisions of this [a]rticle 7 dies before the election (whether death occurs

5

prior to, on[,] or after the day of the primary)[] or declines the nomination; provided that nominations may become vacant for other reasons.

If the name of no established political party candidate was printed on the consolidated primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created which may be filled in accordance with the requirements of this [s]ection. If the name of no established political party candidate was printed on the general primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created, but no candidate of the party for the office shall be listed on the ballot at the general election unless such vacancy is filled in accordance with the requirements of this [s]ection within 60 days after the date of the general primary.

A candidate for whom a nomination paper has been filed as a partisan candidate at a primary election, and who is defeated for his or her nomination at such primary election, is ineligible to be listed on the ballot at that general or consolidated election as a candidate of another political party.

A candidate seeking election to an office for which candidates of political parties are nominated by caucus who is a participant in the caucus and who is defeated for his or her nomination at such caucus[] is ineligible to be listed on the ballot at that general or consolidated election as a candidate of another political party.

In the proceedings to nominate a candidate to fill a vacancy or to fill a vacancy in the nomination, each precinct, township, ward, county[,] or congressional district, as the case may be, shall[,] through its representative on such central or managing committee, be entitled to one vote for each ballot voted in such precinct, township, ward, county[,] or congressional district, as the case may be, by the primary electors

6

of its party at the primary election immediately preceding the meeting at which such vacancy is to be filled.

For purposes of this [s]ection, the words 'certify' and 'certification' shall refer to the act of officially declaring the names of candidates entitled to be printed upon the official ballot at an election and directing election authorities to place the names of such candidates upon the official ballot. 'Certifying officers or boards' shall refer to the local election official, election authority[,] or the State Board of Elections, as the case may be, with whom nomination papers, including certificates of nomination and resolutions to fill vacancies in nomination, are filed and whose duty it is to 'certify' candidates." 10 ILCS 5/7-61 (West 2008).

In *Forcade-Osborn v. Madison County Electoral Board*, 334 Ill. App. 3d 756 (2002), this court, albeit *in dicta*, addressed circumstances very similar to the case at hand. In *Forcade-Osborn*, the petitioner was slated by the Republican Party to fill a vacancy for the office of county treasurer in Madison County when no one was nominated in the March primary to serve as the Republican Party candidate. The Madison County Republican central committee formed a nominating committee to select a person to the fill the vacancy in nomination, and on May 13, 2002, the nominating committee met and selected the petitioner to fill the vacancy in nomination. On May 20, 2002, the petitioner filed her certificate of nomination, statement of candidacy, statement of economic interests, and loyalty oath. On May 24, 2002, however, the Democratic Party candidate for county treasurer filed an objection to the petitioner's nominating papers on the grounds that they were not properly and timely filed. The Madison County electoral board struck the petitioner's name from the election ballot, finding that section 7-61 required the nominating committee to have filed or mailed the certification of nomination within three days of its May 13, 2002, meeting. The circuit court of Madison County upheld the board's rulings, and the petitioner appealed.

7

On appeal, the court dismissed the petitioner's appeal for a lack of subject matter jurisdiction but noted *in dicta* that even if it did have jurisdiction, "the result would be no different, in that the determination of the [b]oard would have to be affirmed on the merits." *Forcade-Osborn*, 334 Ill. App. 3d at 759. The court, in interpreting section 7-61, found that the statute clearly imposed "a deadline for the transmission of a certification of nomination by the nominating authorities to the certifying officer." *Forcade-Osborn*, 334 Ill. App. 3d at 759. The court found that deadline to be May 13, 2002, three days from the date the action was taken to fill the vacancy in nomination. *Forcade-Osborn*, 334 Ill. App. 3d at 759. "Having failed to meet the deadline, [the] petitioner lost the right to have her name placed on the election ballot as a candidate for the office of county treasurer." *Forcade-Osborn*, 334 Ill. App. 3d at 759.

Public Act 96-809 and Public Act 96-848 became effective, January 1, 2010, in which the legislature amended section 7-61 of the Code. The amendments are illustrated as follows, with the deleted provisions struck out and the added provisions in italics:

"If the name of no established political party candidate was printed on the consolidated primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created which may be filled in accordance with the requirements of this [s]ection. If the name of no established political party candidate was printed on the general primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be [created which may be filled in accordance with the requirements of this [s]ection. If the name of no established political party candidate was printed on the general primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created, but no candidate of the party for the office shall be listed on the

8

~~ballot at the general election unless such vacancy is filled in accordance with the~~ ~~requirements of this [s]ection within 60 days after the date of the general primary]~~ *filled only by a person designated by the appropriate committee of the political party and only if that designated person files nominating petitions with the number of signatures required for an established party candidate for that office within 75 days after the day of the general primary. The circulation period for those petitions begins on the day the appropriate committee designates that person. The person shall file his or her nominating petitions, statements of candidacy, notice of appointment by the appropriate committee, and receipt of filing his or her statement of economic interests together. These documents shall be filed at the same location as provided in [s]ection 7-12. The electoral boards having jurisdiction under [s]ection 10-9 to hear and pass upon objections to nominating petitions also shall hear and pass upon objections to nomination petitions filed by candidates under this paragraph.*"   10 ILCS 5/7-61 (West Supp. 2009).

At issue here is whether by amending section 7-61 of the Code, the legislature intended to remove the other requirements of section 7-61, *i.e.*, the resolution and three-day-filing requirements.  We fail to see that intention.

It seems clear that by making the amendments it made, the legislature intended to require a candidate who was not on the ballot and was not a write-in candidate to get "grassroots" support to become a candidate for the general election.  The amendments did not change, however, the requirements of the political party, only the requirements of the candidate.  Moreover, the legislature did not remove or change the requirements of the first sentence of the paragraph amended: "If the name of no established political party candidate was printed on the consolidated primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created

9

which may be filled in accordance *with the requirements of this Section*." (Emphasis added.) 10 ILCS 5/7-61 (West Supp. 2009). We have interpreted this provision in the past as requiring a petitioner who was not on the ballot at the primary and who was not written-in to comply with all of the provisions in section 7-61, specifically, the requirement that the resolution filling the vacancy be transmitted to the certifying officer or board within three days of the action by which the vacancy was filled. See *Forcade-Osborn*, 334 Ill. App. 3d at 759; 10 ILCS 5/7-61 (West 2008). Indeed, if no resolution was required, it begs the question of why the committee filed it at all, albeit late.

Moreover, other decisions of our court have construed the situation at hand–"If the name of no established political party candidate was printed on the consolidated primary ballot for a particular office and if no person was nominated as a write-in candidate for such office ***" (10 ILCS 5/7-61 (West 2008))–as requiring compliance with the resolution requirements of section 7-61. *In re Objection of McSparin*, 352 Ill. App. 3d 352, 357-58 (2004) (finding that the provision of section 7-61 of the Code requiring a resolution to specify the date upon which an individual was selected to fill a vacancy in nomination to be mandatory); *Siegel v. Lake County Officers Electoral Board*, 385 Ill. App. 3d 452, 459 (2008) (holding that "the resolution must include on its face the date the nominee was selected to fill a vacancy in nomination"). Presumably, the legislature was aware of these decisions when it amended the statute and did not expressly remove the resolution and three-day filing requirements. See *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003) (" ' "Where statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law" ' " (quoting *Burrell v. Southern Truss*, 176 Ill. 2d 171, 176 (1997) (quoting *People v. Hickman*, 163 Ill. 2d 250, 262 (1994)))). Had it intended such a result, it could have simply deleted the language stating, "a vacancy in nomination shall be created which may be filled in accordance *with the*

10

*requirements of this [s]ection*" (emphasis added) (10 ILCS 5/7-61 (West Supp. 2009)). It did not and we refuse to render that provision meaningless.

The dissent parses the statute into separate paragraphs, contending that certain paragraphs only apply to certain scenarios. We note that section 7-61 is a single section in a comprehensive election code consisting of all unnumbered paragraphs. If the legislature had intended to divide the statute into separate sections, it certainly could have done so. Nevertheless, the dissent contends that the third unnumbered paragraph does not apply to the situation at hand because "section 7-61 *** contemplates two distinct types of vacancies in nomination that may occur and provides the means for filling the vacancies in each situation." Slip op. at 16. While we agree with the dissent that section 7-61 does contemplate two distinct types of vacancies, *i.e.*, (1) the type of vacancy defined in the eighth unnumbered paragraph–"A vacancy in nomination occurs when a candidate who has been nominated under the provisions of this [a]rticle 7 dies before the election (whether death occurs prior to, on[,] or after the day of the primary)[] or declines the nomination; provided that nominations may become vacant for other reasons," and (2) the type of vacancy set forth in the ninth unnumbered paragraph–"If the name of no established political party candidate was printed on the consolidated primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created which may be filled in accordance with the requirements of this [s]ection," we do not agree that the provisions set forth before the ninth unnumbered paragraph do not apply to the type of vacancy set forth in that paragraph. 10 ILCS 5/7-61 (West Supp. 2009). The statute clearly states that the vacancy "may be filled in accordance with the requirements of this [s]ection," meaning all of section 7-61. 10 ILCS 5/7-61 (West Supp. 2009). That is how we have construed this provision in the past, the legislature did not remove or alter this provision when it amended the statute, and it is further supported by the first sentence of the third

11

unnumbered paragraph which refers to "*[a]ny* vacancy in nomination under the provisions of this [a]rticle," not any unnumbered subparagraph. (Emphasis added.) 10 ILCS 5/7-61 (West Supp. 2009).

While we find no ambiguity in section 7-61, we find further support for our interpretation in the Illinois House debates. See *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 604 (2008). Having reviewed the Illinois House debates regarding the amendments to section 7-61, we have found no indication that the legislature intended to remove the resolution and three-day filing requirements. Nor, as the dissent contends, was there anything in the legislative debates that supports a "Situation A" or "Situation B" scenario. Representative Fortner, the House sponsor of the bill, described the purpose of the bill as follows:

"House Bill 723 would change the process by which we fill vacancies for the general Primary. So, this would cover the case where you have a... a Primary where a major Party failed to have a candidate qualify for the Primary ballot. Current law provides that the Party can fill that vacancy up to 60 days after, and *the only change this Bill would make* is to say that if they wish to so fill it, that person must still get signatures just like the party would have had to get to qualify a candidate before the Primary." (Emphasis added.) 96th Ill. Gen. Assem., House Proceedings, April 2, 2009, at 6 (statements of Representative Fortner).

"The way this Bill would do it, the Party chairs, the ones who would currently do the slating, they can still do that slating. *They would identify who their candidate is. Then that candidate would proceed to get signatures.*" (Emphasis added.) 96th Ill. Gen. Assem., House Proceedings, April 2, 2009, at 15 (statements of Representative Fortner).

While the dissent contends that the words "notice of appointment" substitute for the filing

12

of a resolution, that is mere conjecture. Absolutely nothing in the legislative debates or the language of the statute either before or after its amendment suggests this was the intent of the legislature. There is nothing, as suggested by the dissent, "misguided" about this interpretation of the statute. If the legislature, which we are not, wanted to remove the resolution and three-day filing requirements, it could have easily done so. It did not. Thus, it seems clear that the legislature contemplated that a political party would still be required to first file a resolution naming its candidate, and then that candidate would be required to file petitions.

We find that a resolution filling the vacancy in this case had to be sent by United States mail or personal delivery to the certifying officer or board within three days of the action filling the vacancy. Since this was not done, the petitioner's purported nomination could not withstand a properly filed objection.

The petitioner next contends that the objector's objection was not filed in a timely manner because it was not filed until April 26, 2010. The petitioner argues that any objection to any resolution filed under section 7-61 was required to be filed "within 5 business days" after the last day for filing the applicable resolution, which according to the petitioner would have been April 5, 2010, five business days from March 29, 2010, the date the objector contends was the deadline for the committee to file the resolution.

Section 7-61 of the Code provides as follows: "The provisions of [s]ection 10-8 through 10-10.1 relating to objections to certificates of nomination and nomination papers, hearings on objections, and judicial review[] shall apply to and govern objections to resolutions for filling a vacancy in nomination." 10 ILCS 5/7-61 (West Supp. 2009). Section 10-8 provides in relevant part as follows:

> "Certificates of nomination and nomination papers, and petitions to submit
> public questions to a referendum, being filed as required by this Code, and being in

apparent conformity with the provisions of this Act, shall be deemed to be valid unless objection thereto is duly made in writing within 5 business days after the last day for filing the certificate of nomination or nomination papers or petition for a public question ***[.]

* * *

The provisions of this [s]ection and of [s]ections 10-9, 10-10[,] and 10-10.1 shall also apply to and govern objections to petitions for nomination filed under [a]rticle 7 or [a]rticle 8 ***." 10 ILCS 5/10-8 (West 2008).

Section 7-61 further provides in relevant part as follows:

"If the name of no established political party candidate was printed on the general primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be filled only by a person designated by the appropriate committee of the political party and only if that designated person files nominating petitions with the number of signatures required for an established party candidate for that office within 75 days after the day of the general primary." 10 ILCS 5/7-61 (West Supp. 2009).

Here, the general primary was held on February 2, 2010. Thus, under section 7-61 the last day the petitioner could have filed her nomination papers was Monday, April 19, 2010, 76 days after the general primary, since the seventy-fifth day fell on a Sunday. 10 ILCS 5/7-61 (West Supp. 2009). Therefore, pursuant to section 10-8, the objector had until Monday, April 26, 2010, to file her objection, seven days after the last day for filing nomination papers, since the fifth and sixth days fell on a Saturday and Sunday, respectively. 10 ILCS 5/10-8 (West 2008); see *Thomas v. Powell*, 289 Ill. App. 3d 143, 147 (1997) (finding that the board and the trial court lacked subject matter jurisdiction when the objection was not filed within five days after the last day for filing nomination papers). In this case, the objection

14

was filed on April 26, 2010, "within 5 business days after the last day for filing" (10 ILCS 5/10-8 (West 2008)). Accordingly, the board and the trial court had subject matter jurisdiction, and this argument fails.

CONCLUSION

For the foregoing reasons, we affirm the orders of the circuit court of St. Clair County and the board.

Affirmed.

STEWART, J., concurs.

JUSTICE SPOMER, dissenting:

I respectfully dissent. For the reasons that follow, I would reverse the decisions of the circuit court and the board and remand with directions that the petitioner's name be placed on the ballot for the November 2, 2010, general election.

I cannot agree with the majority that the General Assembly, when amending section 7-61 of the Code, intended to require the filing of a resolution to fill a vacancy in nomination in a case such as this one, as opposed to one created after a primary election resulting in a certified nominee. To the contrary, the amended portion of section 7-61 sets forth a separate and distinct procedure for situations such as we have here and specifically substitutes a "notice of appointment" for the filing of a resolution.

In support of her contention that a resolution was required, the objector relies upon paragraph three of section 7-61 of the Code, which states as follows:

"Any vacancy in nomination under the provisions of this Article 7 occurring

on or after the primary and prior to certification of candidates by the certifying board

15

or officer[] must be filled prior to the date of certification. Any vacancy in nomination occurring after certification but prior to 15 days before the general election shall be filled within 8 days after the event creating the vacancy. The resolution filling the vacancy shall be sent by U. S. mail or personal delivery to the certifying officer or board within 3 days of the action by which the vacancy was filled; provided, if such resolution is sent by mail and the U. S. postmark on the envelope containing such resolution is dated prior to the expiration of such 3[-]day limit, the resolution shall be deemed filed within such 3[-]day limit. Failure to so transmit the resolution within the time specified in this Section shall authorize the certifying officer or board to certify the original candidate. Vacancies shall be filled by the officers of a local municipal or township political party as specified in subsection (h) of Section 7-8, other than a statewide political party, that is established only within a municipality or township and the managing committee (or legislative committee in case of a candidate for State Senator or representative committee in the case of a candidate for State Representative in the General Assembly or State central committee in the case of a candidate for statewide office, including but not limited to the office of United States Senator) of the respective political party for the territorial area in which such vacancy occurs." 10 ILCS 5/7-61 (West Supp. 2009).

To determine whether paragraph three is in fact applicable to the present case, we must construe the statute as written by the General Assembly. I agree with the majority that a statute must be evaluated as a whole, with each provision construed in connection with every other section, and so that no term is rendered superfluous or meaningless. See slip op. at 3 (quoting *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994)). However, unlike the majority, I conclude that when paragraph three is read in light of the other provisions of section 7-61, it is clear that the section as a whole contemplates two

16

distinct types of vacancies in nomination that may occur, and it provides the means for filling the vacancies in each situation.[1] Paragraph eight of the section states, "A vacancy in nomination occurs when a candidate who has been nominated under the provisions of this Article 7 dies before the election *** or declines the nomination; provided that nominations may become vacant for other reasons." 10 ILCS 5/7-61 (West Supp. 2009). It is in the above-described situation, which for ease of discussion I shall deem "Situation A," that paragraphs three and four apply, for each paragraph clearly and unequivocally references the "original" candidate or nominee. 10 ILCS 5/7-61 (West Supp. 2009). This is supported by the fact that paragraph three provides, "Failure to so transmit the resolution within the time specified in this Section shall authorize the certifying officer or board to certify the original candidate." 10 ILCS 5/7-61 (West Supp. 2009). Thus, paragraph three clearly contemplates the situation where there was an original candidate and that person either dies before the election or declines the nomination. It does not, and by definition could not, apply to a situation where there was no "original candidate," a fact the majority plainly and inexplicably fails to address. In that situation, which exists in the case at bar, only paragraph nine applies.

Paragraph nine, which was amended by Public Act 96-809 and Public Act 96-848 and became effective in its present form on January 1, 2010, states, "If the name of no established political party candidate was printed on the consolidated primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created which may be filled in accordance with the requirements of this

---

[1]Paragraph seven of the section contemplates a third type of vacancy in nomination: one that occurs "15 days or less" before the election; however, paragraph seven states that in those situations, the vacancy in nomination shall not be filled and "the certification of the original candidate shall stand," a situation clearly not relevant to the case at bar. 10 ILCS 5/7-61 (West Supp. 2009).

17

Section." 10 ILCS 5/7-61 (West Supp. 2009). In that situation, which I shall deem "Situation B," paragraph nine provides that the vacancy in nomination may be filled only when the following three conditions are met: (1) the person to fill the vacancy in nomination has been "designated by the appropriate committee of the political party" in question, (2) the designated person obtains nominating petitions with the number of signatures required for an established party candidate for that office, with the circulation period to begin "on the day the appropriate committee designates that person," and (3) the designated person has filed, together, the following required documents, within 75 days after the day of the general primary: "his or her nominating petitions, statements of candidacy, notice of appointment by the appropriate committee, and receipt of filing his or her statement of economic interests." 10 ILCS 5/7-61 (West Supp. 2009). Paragraph nine does not require the filing of a resolution in Situation B; indeed, paragraph nine never uses the word "resolution" at all. In a situation such as this one, where the General Assembly has clearly and unequivocally stated what documents must be filed, I decline to read into that statement an additional, unlisted requirement found in an entirely unrelated paragraph.

This is further supported by the amendments the legislature made to paragraph nine of section 7-61. Previously, that section provided as follows:

> "If the name of no established political party candidate was printed on the general primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created, but no candidate of the party for the office shall be listed on the ballot at the general election unless such vacancy is filled in accordance with the requirements of this Section within 60 days after the date of the general primary." 10 ILCS 5/7-61 (West 2008).

That section now, however, sets forth more specifically the requirements the candidate must complete. See 10 ILCS 5/7-61 (West Supp. 2009). In the situation where there is no original

18

candidate on the ballot and no write-in, the candidate must now show "grassroots" support by complying with the requirements in paragraph nine that were not previously included in paragraph nine prior to the amendment. To hold otherwise would be clearly against the legislative intent in making this amendment and against this state's position in favor of ballot access for candidates running for public office. See *Hossfeld v. Illinois State Board of Elections*, 398 Ill. App. 3d 737, 743 (2010), *appeal allowed*, 236 Ill. 2d 504 (2010); *In re Objection of McSparin*, 352 Ill. App. 3d 352, 357 (2004); *Zerante v. Bloom Township Electoral Board*, 287 Ill. App. 3d 976, 980 (1997).

A second glaring problem with the majority's misguided attempt to graft the content of paragraph three into the requirements of paragraph nine is that when setting out the requirement that a resolution pursuant to that paragraph be filed within three days of the action taken to fill the vacancy, paragraph three specifically refers to the resolution as a "resolution filling the vacancy." 10 ILCS 5/7-61 (West Supp. 2009). In Situation A, to which paragraph three applies, that would be true: the resolution would in fact fill the vacancy. In Situation B, however, the vacancy is not filled by the resolution, even under the scenario put forward by the majority: by the plain language of paragraph nine, the vacancy is filled when the three conditions described above are met. This contradiction, which renders the phrase "resolution filling the vacancy" in paragraph three superfluous, meaningless, and in fact contradictory when applied to paragraph nine, is left unexplained by the majority. Indeed, the resolution requirement itself is superfluous and meaningless when applied to Situation B, because, as noted above, Situation B requires the "grassroots" work of collecting petition signatures. It defies logic that in a situation where the candidate has already received from the committee a notice of appointment and has gone on to collect signatures, the committee would also be required to file a resolution. What, one might rightfully ask, would be the point of that resolution? To the extent an argument could be

19

made that the filing of the resolution somehow provided "notice" to the public of the committee's selection, that notice would provide no protection to the public, as it would not prevent others from circulating petitions as well. Only the notice of appointment, which is clearly and unequivocally required by paragraph nine to be filed, would provide that protection and prevent unauthorized petitioners from appearing on the ballot, which is probably why it, and not the resolution, is required by the amended Code.

In the case at bar, it was clearly Situation B, not Situation A, that occurred: as related above, at the February 2, 2010, general primary election, no candidate's name was printed on the Republican Party ballot in St. Clair County for the office of board of review member, and no candidate was nominated as a write-in for that office. Accordingly, on March 25, 2010, the committee held a meeting at which it passed a motion designating the petitioner as the appointee for candidacy for the office of board of review member. Although on April 1, 2010, the committee filed a "resolution/certificate of appointment" with the clerk, stating that the committee had designated the petitioner as its appointee, there was no requirement that such a resolution be filed.[2] Accordingly, an objection to the timeliness of the resolution does not provide a legal basis by which to challenge the petitioner's candidacy, and the decisions of the circuit court and the board should be reversed.

The majority relies upon judicial *dictum* found in this court's decision in *Forcade-Osborn v. Madison County Electoral Board*, 334 Ill. App. 3d 756, 759 (2002). However, *Forcade-Osborn* was decided prior to the amendment of paragraph nine, and whatever

---

[2]The majority wonders why, if no resolution was required, the committee filed one. Slip op. at 10. The answer, I suspect, is that the committee was acting out of an abundance of caution, which is not surprising given the General Assembly's dubious record when it comes to providing candidates and the voting public with an election code that is simple, straightforward, and user-friendly.

persuasiveness our *dicta* might have once had is now eviscerated. Moreover, neither *Forcade-Osborn* nor any other of the preamendment cases upon which the majority relies dealt with the issue of whether a resolution was required in a situation such as this one, and I question the relevance of any of the cases cited by the majority to the issue at hand. However, although not controlling, two recent decisions from the Illinois State Board of Elections do address the exact issue before us, and both decisions support my position rather than the position taken by the majority. *Jenkins v. Wojcik*, Ill. St. Officers Electoral Bd. No. 10 SOEBGE 500 (June 7, 2010); *Marquardt v. Grizzoffi*, Ill. St. Officers Electoral Bd. No. 10 SOEBGE 101 (June 9, 2010).

Finally, although the majority finds "no indication" in the legislative debates that the General Assembly "intended to remove the resolution and three-day filing requirements" (slip op. at 12), I would note that there is also no indication that the General Assembly intended to apply the paragraph three requirements to paragraph nine. In fact, the issue did not arise in the debates, and the substance of the debates revolved around the number of signatures required. No other requirements were debated. Representative Fortner's comments, quoted by the majority (slip op. at 12), must be considered, if at all, in their proper context.

For the foregoing reasons, I respectfully dissent.

NO. 5-10-0265

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| WHITNEY WISNASKY-BETTORF, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 10-MR-123 |
| | ) | |
| PEGGY PIERCE, Objector, ST. CLAIR | ) | |
| COUNTY ELECTORAL BOARD, BOB | ) | |
| DELANEY, Chairman, ROBERT HAIDA, | ) | |
| Member, and CHARLES SUAREZ, Member, | ) | Honorable |
| | ) | Andrew J. Gleeson, |
| Respondents-Appellees. | ) | Judge, presiding. |

---

**Opinion Filed**:       August 19, 2010

---

**Justices**:      Honorable James M. Wexstten, J.,

                Honorable Bruce D. Stewart, J., concurs

                Honorable Stephen L. Spomer, J., dissents

---

**Attorney for Appellant**      Brian M. Funk, Attorney at Law, Westfield Professional Building, 807 West Highway 50, Suite 1, O'Fallon, IL 62269

---

**Attorneys for Appellee**      Robert J. Sprague, Sprague and Urban, 26 East Washington Street, Belleville, IL 62220; Garrett P. Hoerner, Becker, Paulson, Hoerner & Thompson, P.C., 5111 West Main Street, Belleville, IL 62226 (attorneys for Peggy Pierce)